## SOUTHERN EXP. CO. v. TODD et al.

### (Circuit Court of Appeals, Eighth Circuit. May 15, 1893.)

### No. 197.

**1. FEDERAL COURTS—JURISDICTION—SUIT IN WRONG DISTRICT—WAIVER.**

Act March 3, 1887, corrected by the act of August 13, 1888. (24 Stat. p. 552, c. 373; 25 Stat. p. 434, c. 866,) after fixing the jurisdiction of the circuit court, provides that, "where the jurisdiction is founded only on the fact that the parties are citizens of different states, suit shall be brought only in the district of the residence of either the plaintiff or the defendant." *Held*, that this requirement is not jurisdictional in its nature, but confers only a personal privilege of exemption on the defendant, which may be waived by a general appearance, or by pleading to the merits of the action; and an objection to the jurisdiction on this ground, made for the first time by motion in arrest of judgment, is too late.

**2. EVIDENCE—LETTERS—ADMISSIONS BY THIRD PARTIES.**

In an action against an express company for legal services it appeared that plaintiffs were also attorneys for a railroad company which was jointly interested with the express company in the litigation in which the services were rendered. In order to show that the services were not worth what plaintiffs claimed, defendant offered letters written by the railroad company to it, in which the compensation demanded by plaintiffs, as stated by the company, was less than the amount sued for. *Held*, that the letters were res inter alios acta, and, as to any admissions by plaintiffs, were mere hearsay, and hence they were incompetent.

In Error to the Circuit Court of the United States for the Eastern District of Arkansas. Affirmed.

The statement is contained in the opinion.

U. M. Rose, W. E. Hemingway, and G. B. Rose, for plaintiff in error.

George E. Dodge and B. S. Johnson, for defendants in error.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

SANBORN, Circuit Judge. The Southern Express Company brings this writ of error to reverse a judgment against it in favor of Charles S. Todd and William T. Hudgins, the defendants in error, who were the plaintiffs below, rendered by the circuit court of the United States for the eastern district of Arkansas. The plaintiffs alleged in their complaint that they were citizens and residents of the state of Texas; that the defendant was a corporation organized under the laws of Georgia, doing business in Arkansas; and that, at its request, they had rendered certain services, as attorneys, which were worth $3,000. The defendant answered that it never employed the plaintiffs, and that their services were not worth $3,000. The case was tried by a jury, who found a verdict in favor of the plaintiffs. Judgment was entered on the verdict, and on August 11, 1892, the defendant made a motion in arrest of judgment on the ground that the court had no jurisdiction of the action. The court below overruled this motion, and this ruling is the first error assigned.

The act of congress of March 3, 1887, and the act of August 13, 1888, for its correction, (24 Stat. p. 552, c. 373; 25 Stat. p.

434, c. 866,) provide that the circuit courts shall have original cognizance of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of $2,000, in which there shall be a controversy between citizens of different states, and that "no person shall be arrested in one district, for trial in another, in any civil action before a circuit or district court, and no civil suit shall be brought before either of said courts, against any person, by any original process or proceeding in any other district than that of which he is an inhabitant; but, where the jurisdiction is founded only on the fact that the action is between citizens of different states, suit shall be brought only in the district of the residence of either the plaintiff or the defendant." In the case at bar the jurisdiction of the circuit court was founded only on the fact that the action was between citizens of different states. The plaintiffs were citizens and residents of Texas. The defendant was a citizen and resident of Georgia. And the objection urged by counsel for the defendant is that this action could be brought against this Georgia corporation only in the district of the residence of the plaintiffs, in Texas, or in that of the residence of the defendant, in Georgia, and that, therefore, the circuit court for the eastern district of Arkansas was without jurisdiction. In answer to the suggestion that this objection comes too late after judgment against their client, they invoke the rule of the federal courts that if the want of jurisdiction is discovered at any time before the final disposition of the action it must be dismissed.

The vice of this contention lies in the fact that it confounds the jurisdiction of the court with the personal privilege of the party. When an action is brought in a circuit court, and it appears from the complaint or the record that there is a controversy between citizens of different states, and that the amount in dispute is sufficient under the acts of congress, that court has jurisdiction, although it may not be brought in the district of the residence of either the plaintiff or the defendant. The essential jurisdictional facts in such a case are the diverse citizenship, and the amount in controversy. These facts must, no doubt, appear upon the record, and where they do not appear the federal courts may take notice of their absence, and dismiss the case at any stage of the proceedings. The cases to which we are referred by defendant's counsel as authority for the position that the defendant is not too late with its objection here are cases of this character,—where the records failed to disclose the diverse citizenship of the parties, or the proper amount in controversy. Such cases are Railway Co. v. Swan, 111 U. S. 379, 4 Sup. Ct. Rep. 510; King Bridge Co. v. Otoe Co., 120 U. S. 225, 7 Sup. Ct. Rep. 552; Anderson v. Watt, 138 U. S. 694, 11 Sup. Ct. Rep. 449; Graves v. Corbin, 132 U. S. 571, 10 Sup. Ct. Rep. 196; Morris v. Gilmer, 129 U. S. 315, 9 Sup. Ct. Rep. 289; Metcalf v. Watertown, 128 U. S. 586, 9 Sup. Ct. Rep. 173; Williams v. Nottawa Tp., 104 U. S. 209; Farmington v. Pillsbury, 114 U. S. 138, 5 Sup. Ct. Rep. 807; Little v. Giles, 118 U. S. 596, 7 Sup. Ct. Rep. 32; Crehore v. Railway Co.,

131 U. S. 244, 9 Sup. Ct. Rep. 692; Stevens v. Nichols, 130 U. S. 230, 9 Sup. Ct. Rep. 518.

No case has been cited, however, where any federal court has dismissed an action on the sole ground that it was brought in the wrong district, after the defendant had appeared generally, or pleaded to the merits, without first objecting that the action was not brought in the district of the residence of either of the parties to the action. This objection relates, not to the jurisdiction of the court, but to the personal privilege or exemption of the defendant. Where he makes the objection seasonably, before appearing generally, or pleading to the merits of the action, his privilege is inviolate, and the action against him cannot be maintained in that court. He cannot be compelled to submit to the jurisdiction of the circuit court of a district in which neither of the parties to the action resides. Shaw v. Mining Co., 145 U. S. 444, 12 Sup. Ct. Rep. 935; Southern Pac. Co. v. Denton, 13 Sup. Ct. Rep. 44; Railway Co. v. Pinkney, (decided by the supreme court May 1, 1893,) 13 Sup. Ct. Rep. 859.

On the other hand, since this objection does not go to the jurisdiction of the court, but is a mere personal privilege or exemption, the defendant has the option of waiving it, and of consenting to be sued, and to try his case, in the wrong district. A general appearance, or a plea to the merits, without first claiming his privilege, is a complete waiver of it. It is, in effect, a consent to try his case in the wrong district; and when he has thus waived his privilege, and tried his case, it is too late for him to object for the first time that the action was not tried in the proper court. He cannot be permitted to experiment in that way with the courts until he obtains from some court a favorable decision. Nor is it at all material whether the fact that the action is brought in the wrong district appears from the face of the complaint, or from the plea of the defendant. No reason occurs to us why his answer to the merits—his waiver of his privilege—should not have as much force when his privilege is tendered to him on the face of the complaint as when he is compelled to set forth by plea or answer the facts upon which it is based.

The eleventh section of the judiciary act of 1789 (1 Stat. 79) provided that no person should be arrested in one district for trial in another, in any civil action before a circuit or district court, and that no civil suit should be brought before either of said courts, against an inhabitant of the United States, by any original process, in any other district than that whereof he was an inhabitant, or in which he should be found, at the time of serving the writ. In Gracie v. Palmer, (decided in 1823,) 8 Wheat. 699, an action was brought in the circuit court of the district of Pennsylvania. The plaintiffs were described to be aliens, and subjects of the king of Great Britain, and the defendants, Gracie and others, to be citizens of the state of New York; and it did not appear that the defendants were inhabitants of, or found in, the district of Pennsylvania, at the time of serving the writ. Daniel Webster moved to dismiss the writ of error for want of jurisdic-

tion. Chief Justice Marshall delivered the opinion of the supreme court, and said:

"That the uniform construction, under the clause of the act referred to, had been that it was not necessary to aver on the record that the defendant was an inhabitant of the district, or found therein. That it was sufficient if the court appeared to have jurisdiction by the citizenship or alienage of the parties. The exemption from arrest in a district in which the defendant was not an inhabitant, or in which he was not found, at the time of serving the process, was the privilege of the defendant, which he might waive by a voluntary appearance. That if process was returned by the marshal, as served upon him within the district, it was sufficient, and that where the defendant voluntarily appeared in the court below, without taking the exception, it was an admission of the service, and a waiver of any further inquiry into the matter."

In Toland v. Sprague, (decided in 1838,) 12 Pet. 300, 330, an action was brought in the circuit court for the eastern district of Pennsylvania by the process of foreign attachment. It appeared from the record that the defendant was a citizen of the state of Massachusetts, resident at Gibraltar, and that he was not found in the eastern district of Pennsylvania. The supreme court held that he was exempt from suit in that district in the circuit court, but as he had appeared generally, and pleaded to the issue, sustained the judgment. Mr. Justice Barbour, in delivering the opinion of that court, said:

"It appears that the party appeared, and pleaded to issues. Now, if the case were one of a want of jurisdiction in the court, it would not, according to well-established principles, be competent for the parties, by any act of theirs, to give it. But that is not the case. The court had jurisdiction over the parties, and the matter in dispute. The objection was that the party defendant not being an inhabitant of Pennsylvania, nor found therein, personal process could not reach him, and that the process of attachment could only be properly issued against a party under circumstances which subject him to process in personam. Now, this was a personal privilege or exemption, which it was competent for the party to waive. The cases of Pollard v. Dwight, 4 Cranch, 421, and Barry v. Foyles, 1 Pet. 311, are decisive to show that after appearance and plea the case stands as if the suit were brought in the usual manner; and the first of these cases proves that exemption from liability to process, and that in case of foreign attachment, too, is a personal privilege, which may be waived, and that appearing and pleading will produce that waiver."

In Ex Parte Schollenberger, (decided in 1877,) 96 U. S. 369, 378, Chief Justice Waite, delivering the opinion of the supreme court, said:

"The act of congress prescribing the place where a person may be sued is not one affecting the general jurisdiction of the courts. It is rather in the nature of a personal exemption in favor of a defendant, and it is one which he may waive. If the citizenship of the parties is sufficient a defendant may consent to be sued anywhere he pleases, and certainly jurisdiction will not be ousted because he has consented."

By the act of February 18, 1875, entitled "An act to correct errors and to supply omissions in the Revised Statutes of the United States," (18 Stat. pp. 316, 320, c. 80,) section 5198 of the Revised Statutes, (title, "National Banks,") which gave the right to recover back twice the amount of the interest illegally received by a national bank, was amended by adding thereto these words:

"That suits, actions, and proceedings against any association under this title may be had in any circuit, district, or territorial court of the United States held within the district in which such association may be established, or in any state, county, or municipal court in the county or state in which said association is located, having jurisdiction in similar cases."

In Bank v. Morgan, (decided in 1889,) 132 U. S. 141, 145, 10 Sup. Ct. Rep. 37, the Charlotte National Bank, which was established at Charlotte, in Mecklenburg county, N. C., was sued in the superior court of Cleveland county, in that state. The bank appeared, and pleaded to the merits, and after judgment against it objected to the jurisdiction of the court. Mr. Justice Harlan, delivering the opinion of the supreme court, said:

"Considering the object, as well as the words, of the statute authorizing suit against a national banking association to be brought in the proper state court of the county where it is located, we are of opinion that its exemption from suits in other courts of the same state was a personal privilege that it could waive, and which in this case the defendant did waive, by appearing and making defense without claiming the immunity granted by congress."

In Railway Co. v. McBride, 141 U. S. 127, 130, 11 Sup. Ct. Rep. 982, the plaintiffs brought an action in the circuit court for the western district of Arkansas. They alleged in their complaint that they were citizens and residents of that district, and that the defendant was a corporation and citizen of the state of Missouri. The defendant demurred to the complaint on the grounds that the court had no jurisdiction of the person of the defendant, that it had no jurisdiction of the subject-matter of the action, and that the complaint did not state facts sufficient to constitute a cause of action. The demurrer was overruled; the action was tried, and on a writ of error brought by the defendant corporation to reverse the judgment, on the ground that the action was not brought in the district of which the defendant was an inhabitant, the supreme court held that the appearance and general demurrer waived all defects of service, and all special privileges of the defendant, in respect to the particular court in which the action was brought. Mr. Justice Brewer, who delivered the opinion of that court, carefully reviewed the authorities, and closed his opinion with these words:

"Without multiplying authorities on this question, it is obvious that the party who in the first instance appears and pleads to the merits waives any right to challenge thereafter the jurisdiction of the court on the ground that the suit has been brought in the wrong district."

To the same effect is Railroad Co. v. Cox, 145 U. S. 593, 603, 12 Sup. Ct. Rep. 905. And in Southern Pac. Co. v. Denton, (decided in 1892,) 13 Sup. Ct. Rep. 45, a case in which the objection that the action was brought in the wrong district was made in the first instance, and sustained, Mr. Justice Gray, delivering the opinion of the supreme court, said:

"It may be assumed that the exemption from being sued in any other district might be waived by the corporation, by appearing generally, or by answering to the merits of the action, without first objecting to the jurisdiction."

Thus it will be seen that for more than 60 years the supreme court has uniformly held that a general appearance or an answer to the merits by the defendant was a waiver of the objection that the action was brought in the wrong district, and that it was too late thereafter to insist upon it. The defendant's objection here was first made by its motion in arrest of judgment after the answer, and after a contested jury trial. It came too late, and the motion was properly denied.

But a single assignment of error remains to be considered. The plaintiffs were employed by the defendant to perform the services for which they recovered judgment in this action through C. T. Campbell, its superintendent, but the amount of their compensation was not agreed upon. They claimed $3,000. At the time these services were rendered the plaintiffs were the attorneys of the receivers of the St. Louis, Arkansas & Texas Railway Company. The services rendered related to the prosecution of criminals for a robbery and murder, in which the defendant and the receivers were both interested; and the plaintiffs wrote Samuel H. West, the general attorney for the railway company, at St. Louis, that they did not consider that their employment as attorneys for the company embraced criminal business, and that they should expect extra compensation from the railroad company and the express company in the matter in which these services were rendered. For the purpose of proving that the plaintiff's services were not worth the amount they claimed, the defendant offered in evidence nine letters that passed between the officers of the express company and the railroad company, which contain statements that the compensation for these services demanded by the plaintiffs was less than the amount they claimed at the trial. These letters were rejected on the objection of the plaintiffs, and this ruling is the supposed error complained of. The letters were mere hearsay. At most, they only contained statements by third parties of admissions made by the plaintiffs against their interest. Those admissions might have been proved by producing the witnesses to whom they were made, and submitting them to cross-examination; but the statements of these witnesses, not under oath, to third parties or to each other, were clearly inadmissible. These statements, and the letters which contained them, were res inter alios acta. No one of the writers or recipients of the letters was an agent of the plaintiffs, nor authorized to bind them by any statements he might make. The plaintiffs were not advised of the contents of the letters, and no rule of evidence occurs to us under which they could have been properly submitted to the jury. The judgment below is affirmed, with costs.