# CASES

## ARGUED AND DETERMINED

#### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

---

### SHANBERG v. FIDELITY & CASUALTY CO. OF NEW YORK.

#### (Circuit Court of Appeals, Eighth Circuit. November 4, 1907.)

#### No. 2,509.

**1. COURTS—JURISDICTION OF FEDERAL COURTS—DISTRICT OF SUIT.**

The provisions of section 1 of the federal judiciary act of March 3, 1875, c. 137, 18 Stat. 470 as amended by Act March 3, 1887, c. 373, 24 Stat. 552 and Act Aug. 13, 1888, c. 866, 25 Stat. 433 [U. S. Comp. St. 1901, p. 508], restricting the districts in which suit may be brought where jurisdiction is founded only on diversity of citizenship to those of which either the plaintiff or defendant is a resident, may be waived by the parties, and where, after the removal of a cause, the plaintiff appears and pleads and goes to trial without objection or motion to remand, the fact that neither party is a resident of the district does not deprive the court of jurisdiction.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 148.

Diverse citizenship as a ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.]

**2. INSURANCE—ACCIDENT INSURANCE—WHAT CONSTITUTES ACCIDENT.**

A policy insuring against disability or death "resulting directly and independently of all other causes from bodily injuries sustained through external violent and accidental means" does not render the insurer liable for the death of the insured from rupture of the heart, the walls of which had been weakened by what is known as "fatty degeneration," the immediate inciting cause of the rupture being either over exertion in assisting to carry a burden, or deep breathing following such exertion, neither of which was accidental.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, §§ 1177, 1178.

Accident insurance, risks and causes of loss, see note to National Accident Society v. Dolph, 38 C. C. A. 3.]

In Error to the Circuit Court of the United States for the Western District of Missouri.

For opinion below, see 143 Fed. 651.

J. C. Rosenberger (I. J. Ringolsky, on the brief), for plaintiff in error.

J. H. Harkless (Charles S. Crysler and Clifford Histed, on the brief), for defendant in error.

Before VAN DEVANTER and ADAMS, Circuit Judges, and RINER, District Judge.

RINER, District Judge. This was an action to recover upon an accident insurance policy. The action was originally brought in the state court, and removed by the defendant to the Circuit Court of the United States for the Western District of Missouri. The defendant answered in the case, the plaintiff filed her reply thereto, and the case proceeded to trial before the court and a jury. At the conclusion of the evidence, the court directed the jury to return a verdict in favor of the defendant.

While numerous errors are assigned in the record, two, only, are relied upon here: First, the court erred in entertaining jurisdiction of the case, because it affirmatively appears from the record that neither plaintiff nor defendant was, at the time the suit was brought and tried, a citizen of the state or district in which the suit was brought, the plaintiff in error being a citizen and resident of the state of Kansas, and the defendant in error being a citizen and resident of the state of New York, therefore the case was not one which could be removed into the Circuit Court; second, that the court erred in instructing the jury to return a verdict for the defendant.

The question of jurisdiction was not raised in the court below. No objection whatever to its jurisdiction was made in that court; plaintiff voluntarily appeared, filed a reply, and proceeded in the trial without objection, the question of jurisdiction being now raised for the first time in the brief of plaintiff in error filed in this court. It is insisted that the case of Ex parte Wisner, 203 U. S. 449,[1] is controlling in this case, and fully sustains the contention of the plaintiff. It must be conceded that there is a statement found in the opinion of the court in that case which tends to give color to this contention, but, to determine what was really decided, we must look at the case then before the court. In that case, Wisner, a citizen of the state of Michigan, commenced an action in the state court in the state of Missouri against Beardsley, a citizen of the state of Louisiana. Beardsley filed his petition to remove the case from the state court into the Circuit Court of the United States for the Eastern Division of the Eastern District of Missouri, on the ground of diversity of citizenship, together with the bond required in such cases; an order of removal was thereupon entered by the state court, and a transcript of the record was filed in the Circuit Court. Wisner moved to remand on the ground that the Circuit Court had not acquired jurisdiction by the removal. The motion was heard and denied. Wisner then applied to the Supreme Court for leave to file a petition for mandamus, which was granted, and rules entered returnable upon a day fixed, and the case submitted on the returns to the rules. The Supreme Court held that the motion to remand to the state court should have been sustained on the ground that the Circuit Court had no jurisdiction to proceed. It will thus be seen that the Wisner Case differs materially from the case at bar, in that in that case the plaintiff took advantage of the first opportunity to raise the question of jurisdiction by presenting his motion to remand upon

[1] 27 Sup. Ct. 150, 51 L. Ed. 264.

that ground, whereas, in this case the plaintiff not only failed to ask that the case be remanded, but voluntarily filed her reply and proceeded to trial, thus bringing the case more nearly within the principle announced by the Supreme Court in the case of Central Trust Company v. McGeorge, 151 U. S. 129, 14 Sup. Ct. 286, 38 L. Ed. 98. In the case last cited, the Central Trust Company, a corporation created by and existing under the laws of the state of New York, filed a bill in equity in the Circuit Court of the United States for the Western District of Virginia against the Virginia, Tennessee & Carolina Steel & Iron Company, a corporation created by and existing under the laws of the state of New Jersey. The defendant company entered a general appearance, and joined with the complainant in its prayer for the appointment of a receiver, without objection to the jurisdiction. Thereafter the Circuit Court dismissed the bill on the ground that under the act of March 3, 1887, c. 373, 24 Stat. 552, as amended by the Act of August 13, 1888, c. 866, 25 Stat. 433 [U. S. Comp. St. 1901, p. 508], it was without jurisdiction of the cause. The Supreme Court reversed the decree dismissing the bill, holding that exemptions from being sued out of the district of its domicile is a privilege which a corporation may waive, and which is waived by pleading to the merits; and, further, that the fact that neither the plaintiff nor the defendant resides in the district in which the suit is brought does not prevent the operation of the waiver. See, also, Ex parte Schollenberger, 96 U. S. 369, 24 L. Ed. 853; Bank v. Morgan, 132 U. S. 141, 10 Sup. Ct. 37, 33 L. Ed. 282; St. Louis & San Francisco Railway Company v. McBride, 141 U. S. 127, 11 Sup. Ct. 982, 35 L. Ed. 659; Southern Express Company v. Todd, 56 Fed. 104, 5 C. C. A. 432; Memphis Savings Bank et al. v. Houchens, 115 Fed. 96, 52 C. C. A. 176, and cases cited in note on page 192; Shaw v. Quincy Mining Company, 145 U. S. 444, 12 Sup. Ct. 935, 36 L. Ed. 768; Southern Pacific Company v. Denton, 146 U. S. 202, 13 Sup. Ct. 44, 36 L. Ed. 942. In the two cases last cited, the right of a corporation to avail itself of the exempting clause of the acts of 1887–88 was maintained, yet in both cases the defendants appeared specially and set up the right of exemption. If the plaintiff in this case had, upon its removal from the state court, filed a motion to remand on the ground that the Circuit Court was without jurisdiction, the case would clearly come within the rule announced in the Wisner Case, but, not having done so, by pleading to the merits and voluntarily submitting herself to the jurisdiction of the Circuit Court, we think the objection to the jurisdiction now raised in this court for the first time comes too late.

The second assignment of error relates to the action of the court in directing a verdict for the defendant. It appears from the record that P. Shanberg, the husband of the plaintiff, who lived in Kansas City, Kan., on the 22d of March, 1904, applied for and obtained from the defendant's agent in Kansas City, Mo., an accident policy. The provisions of the policy, so far as they are material here, are as follows:

"The Fidelity and Casualty Company of New York (herein called the company), in consideration of the premises, and of the statements in the schedule of warranties hereinafter contained, which statements the assured makes on

the acceptance of this policy and warrants to be true, does hereby insure the person named and described in said schedule (and herein called the assured) for the period of one year from noon, standard time, of the day this contract is dated, (1) against disability or death resulting directly and independently of all other causes, from bodily injuries sustained through external, violent and accidental means. * * * If death shall result within ninety days from said injuries, the company will pay the beneficiary hereinafter named, if surviving, five thousand dollars."

The policy also insures against disability from certain illnesses therein specified, and then provides:

"This insurance does not cover disability from disease or illness resulting from voluntary or unnecessary exposure to contagion or infection; nor any illness or illnesses other than those specified in this policy; nor any illness complicated with or resulting from a disease not specifically covered by this policy; nor any illness occasioned by or resulting from a surgical operation; nor any disease contracted within fifteen days from noon of the day this policy is issued."

It is further shown by the record that at the time of his death, which occurred January 30, 1905, the assured was the owner of two buildings in Kansas City, Kan.; that the distance between the two buildings was about three city blocks; that on the morning of the 30th of January he and the witness, Higgins, carried a cellar door, 3 feet 4 inches in width by 6 feet 9 inches in length, and weighing about 86 pounds, from one of these buildings to the other. The witness, Higgins, testified that upon arriving at their destination, and just as they had set the door down, the assured turned to him and said: "Shorty, I am tired." He then turned his head back, and a few seconds afterwards his head drew back with a quick jerky motion, his lips turned blue, he grabbed the door with both hands and fell forward on his face from the door; that witness attempted to pick him up, but found he was dead. This witness further testified that the weather was cold, with some snow on the ground; that during the time they were engaged in carrying the door from one building to the other the assured did not at any time slip or stumble; that the door did not strike the assured at any time, nor the assured strike the door; that on that morning, up to the time he died, he had suffered no wrench, slip, injury, or fall. The autopsy disclosed that the assured was suffering from what is known to the medical profession as "fatty heart" or "fatty degeneration of the heart," and that the heart was ruptured. Dr. Hailey, who conducted the examination, testified that the walls of the heart of the assured were thin and it was a feeble heart, the muscular structure being thin and degenerated, what was known as "fatty degeneration of the heart," and that straining, holding the breath, filling the chest with air, as is done by making powerful exertion, could, under the facts as disclosed by this case, cause the rupture of the heart.

The policy is one of indemnity against disability or death, resulting directly, and independently of all other causes, from bodily injuries sustained through external, violent, and accidental means, and also against disability from certain illnesses therein specified. The disease from which the assured was suffering at the time of his death was not enumerated in the policy, and, as we view the case, there was no acci-

dent in the means through which the bodily injury was effected. It would not help the matter to call the injury itself—that is, the rupture of the heart—an accident. That was the result, and not the means through which it was effected. Carrying the door, or, after putting it down, the act of filling his lungs with air by drawing a long breath, was the means by which the injury was caused. Both were done by the assured voluntarily, and in an ordinary way with no unforeseen, accidental, or involuntary movement of the body whatever. There was no stumbling, slipping, or falling; there was nothing accidental in his movements, any more than there would be in walking on the street, or passing down the steps of his house, during each of which he might have filled his lungs by drawing a long breath, and ruptured his heart. The policy does not purport to be a contract of indemnity against death or injury by all means. The cause of death must in all cases, where it is sought to recover under the provisions above quoted, result directly, and independently of all other causes, from bodily injury sustained through external, violent, and accidental means, or the event is without the scope of the contract. The degree of violence or force is not material. Had the assured, while assisting in carrying the door, lost his balance and fallen and struck upon some unforeseen object, or slipped on the ice, his death might be said to have resulted from violent or accidental means, and, assuming that there was no want of due diligence on his part, would doubtless be covered by the policy. But from the facts as disclosed by the record in this case, we do not think it can be said that the rupture of the assured's heart, and which caused his death, was in any sense the result of an accident. He engaged in carrying this door for his own convenience; he encountered no obstacle in doing so; he accomplished just what he intended to, in the way he intended to, and in the free exercise of his choice. No accident of any kind interfered with his movements, or for an instant relaxed his self-control.

Even assuming that the walls of the heart gave way under the strain to which the assured had voluntarily put it, under circumstances free from all peril or necessity, we are of opinion that the case would not come within the provisions of the policy, and therefore that the Circuit Court rightly instructed the jury to return a verdict for the defendant. Judgment affirmed.