### HARDING v. STANDARD OIL CO. et al.

(Circuit Court, N. D. Illinois, E. D. May 15, 1909.)

#### No. 28,865.

1. REMOVAL OF CAUSES (§ 86*)—NONRESIDENCE OF BOTH PARTIES—JURISDICTION ACQUIRED BY FEDERAL COURT.—AMENDMENT OF PETITION.

On the removal of a cause in which, as appears by the record, the parties are citizens of different states, but neither is an inhabitant of the district of suit, the federal court acquires general jurisdiction by virtue of the diversity of citizenship of the parties, and has power to permit the petition for removal to be amended to show that plaintiff is in fact a citizen and resident of the district of suit.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 178; Dec. Dig. § 86.*]

2. REMOVAL OF CAUSES (§ 86*)—SEPARABLE CONTROVERSY—AVERMENTS OF PETITION.

It is usual in a petition for removal which alleges a separable controversy to set out the nature of such controversy, but it is sufficient if it appears from the record that such controversy actually exists.

[Ed. Note.—For other cases, see Removal of Causes, Dec. Dig. § 86.*]

On Motion for Leave to Amend Petition for Removal.

George F. Harding, and Wm. J. Ammen, for complainant.

Mayer, Meyer & Austrian and Calhoun, Lyford & Sheehan, for Corn Products Mfg. Co.

SANBORN, District Judge. Motion for leave to amend original removal petition of Corn Products Company. The suit was commenced October 23, 1907, in the superior court of Cook county, Ill., and an amended bill was filed October 25, 1907. On November 5, 1907, the Corn Products Company filed its petition for removal on the ground of separable controversy. On the same day all the other defendants, corporate and individual, filed papers in the state court consenting to and petitioning for the removal. The removal petition, following the original and amended bills, alleged that complainant was a citizen of California, the four corporation defendants citizens of New Jersey, and making no allegation respecting the citizenship of the individual defendants; but stating that five of such defendants were not at the filing of the bill and petition either directors or officers of either of the corporate defendants. The petition stated that said suit presented a separable controversy between complainant and petitioner, and that

the matter in dispute "exceeds, exclusive of interest and costs, the sum or value of two thousand dollars." The nature of the separable controversy is not stated, and the individual defendants are assumed to be only nominal defendants. It seems to have been also assumed that the nature of the separable controversy sufficiently appears from the amended bill.

On the same day, November 5, 1907, notice was given to complainant's solicitor that the petition would be presented to Judge Ball of the superior court. On November 6, 1907, this court made an order directing the filing in this court of a transcript of the record of the state court and restraining the further prosecution of the suit by the complainant in the state court; and on the same day the removing defendant filed in this court, in support of and supplemental to the petition for removal, a verified statement alleging the citizenship of the individual defendants, showing that four of the defendants were, at the commencement of the suit, and still are, citizens of Illinois, and that the other individual defendants were citizens of states other than California and Illinois.

Before the proceedings above mentioned a similar suit had been filed in the state court by the Chicago Real Estate Loan & Trust Company against the Corn Products Company and others for the same relief as prayed in the Harding bill. That suit was removed to this court, and an injunction issued restraining complainant from farther prosecuting the case in the state court. It was claimed by defendants that the bringing of the second suit was a violation of said injunction, and on contempt proceedings brought against Harding and others this court, by order of December 13, 1907, decided that they were in contempt, but they were discharged, but restrained from the further prosecution of the Harding suit. This injunction was issued on the theory that the Harding suit was really the same as the loan and trust company's suit.

After the removal of the Harding suit, and in the fall of 1907, Harding desired to make a motion to remand that suit; and on December 23, 1907, filed a motion to remand on eight grounds, being no separable controversy, no removable cause shown, no diverse citizenship, no statement of the particulars of the alleged separable controversy, that the Standard Oil Company did not unite in the petition (this is a mistake), and that the removal order is unlawful. The fifth clause of the motion to remand is as follows:

"Because the complainant in said cause was, at the time of the commencement of said suit and at the time of the presenting of said petition for removal therein to said superior court, and of the filing of the same therein, a citizen of the state of California, and a citizen of no other state, and at the times aforesaid was not a resident of the aforesaid district; and Charles I. Glass, Joy Morton, William J. Calhoun, and H. G. Herget, defendants in said cause, were, respectively, at the times aforesaid, citizens and residents of the state of Illinois, and the other defendants, respectively, were not, at the times aforesaid, citizens of said state of Illinois, or residents of said district, but were, at said times, citizens of states other than said state of Illinois, and not residents, respectively, of said district."

It is claimed by complainant that this motion to remand is based upon Ex parte Wisner, 203 U. S. 449, 27 Sup. Ct. 150, 51 L. Ed. 264.

This is not clear, and the motion is quite different from the one filed in the Wisner Case. This is not important, except that the motion does not distinctly apprise defendants that the Wisner Case was relied on.

The Circuit Court regarded the motion to remand as unimportant because of the pendency of the prior case of the loan and trust company, and would not permit it to be brought on because of the injunction in the first case. Meanwhile, however, the loan and trust company moved for leave to dismiss the first suit. Leave was denied; but on appeal from the injunction order it was held by the Circuit Court of Appeals that it should have been granted. Harding v. Corn Products Co. (Jan. 19, 1909) 168 Fed. 658. The injunction order was reversed, and the bill ordered dismissed.

With the bill in the first suit dismissed, the Harding Case became the only one pending, and the importance of the removal and the motion to remand, having been before that of little importance, at once became matters of great importance and concern to the respective parties. In this situation, and on April 16, 1909, the Corn Products Company applied to this court for leave to amend its original petition for removal so as to allege that Harding was when the suit was commenced, and ever since had been, a citizen of Illinois. It was alleged in the petition for leave to amend that petitioner, in making its original removal petition, relied on and believed the statement of the bill that Harding was a citizen of California, and it did not discover the falsity of such statement until April 12, 1909. Complainant answered the petition, appearing specially and for the purpose only of objecting to the jurisdiction of the court, as stated in his petition to remand filed December 23, 1907; and insisting that the court has no jurisdiction, no power or authority to allow or entertain the motion to amend. Other objections are stated, and it is submitted that complainant is, and long has been, a citizen of California. It is also insisted that if the court has power to allow the amendment it should not do so, because complainant constantly insisted on the hearing of his motion to remand, but the court refused to hear him by reason of the injunction, and that if the motion could have been heard it must have resulted in the case being remanded, and, the injunction having been erroneous, complainant should not be thus prejudiced by a situation which prevented him from obtaining a hearing. But the injunction only became erroneous by reason of the refusal of this court to dismiss the first case, on motions made before the injunction order of December 13, 1907, was entered. Complainant at once appealed from that order, and nothing could be done, as a matter of course, while the appeal was pending, in respect to the motion to remand. It seems, therefore, that the motion for leave to amend should be granted, if the power of amendment exists. Defendant relies on Wilbur v. Red Jacket, etc., Co. (C. C.) 153 Fed. 662, a case very much like this, for its procedure in bringing its petition for leave to amend.

In regard to the question of power, it is insisted that no jurisdiction is shown by the original petition for removal, because the suit is not brought in the district of the residence of either the plaintiff or defendant; and since Harding has not consented to sue here, and has waived nothing, the case is not now removable under Ex parte Wisner and

In re Moore, 209 U. S. 490, 28 Sup. Ct. 585, 706, 52 L. Ed. 904. On the other hand, it is urged that, as the original petition showed diverse citizenship, the general jurisdiction was complete, and the question is one of venue only, of the power of this particular court to proceed. The lower federal courts are hopelessly divided on this precise question, but the practice under the act of 1789 seems to have been clear.

The judiciary act of September 24, 1789, 1 Stat. 78, c. 20, § 11, contained the provision that no civil suit should be brought against an inhabitant of the United States in any other district than that whereof he was an inhabitant, or in which he should be found at the time of serving the writ. Under this act the question arose whether, in cases of diverse citizenship, or of an alien against a citizen, it was necessary to allege that the defendant was an inhabitant of or found within the district in which suit was brought. In Gracie v. Palmer, 8 Wheat. 699, 5 L. Ed. 719, suit was brought in the District of Pennsylvania by aliens against citizens of New York, and it did not appear that they were inhabitants of nor found in Pennsylvania. On error to the Supreme Court a motion to dismiss was made by Mr. Webster for want of jurisdiction. In overruling the motion, Chief Justice Marshall stated that the uniform construction under the clause of the act referred to had been that it was not necessary to aver on the record that the defendant was an inhabitant of or found within the district, and that it was sufficient if the court appeared to have jurisdiction by the citizenship or alienage of the parties. And in Cooley v. McArthur (C. C.) 35 Fed. 372, the precise point here presented was decided by Judge Brown, on a motion to remand, in favor of the jurisdiction. To the same effect are Express Co. v. Todd, 56 Fed. 104, 5 C. C. A. 432, and Scott v. Hoover (C. C.) 99 Fed. 249.

Before the decision of Ex parte Wisner in 1906, the decisions of the Circuit Courts of Appeal, and of the Circuit Courts, while by no means uniform, were generally in support of the right of removal, even against the plaintiff's objection. The argument in favor of the removal is stated by Judge Newman in Rome Petroleum & Iron Co. v. Hughes Specialty Well Drilling Co. (C. C.) 130 Fed. 585. The argument is that the place of bringing suit or maintaining it is one of venue, not of jurisdiction, and that the language of section 1 of the removal act, that no civil suit shall be brought by any original process or proceeding in any other district than that whereof defendant is an inhabitant, was intended to exclude removal cases, they not being brought by original process in the federal courts; that section 2, providing for removal only of cases of which the federal courts are given jurisdiction by section 1, refers only to the first part of section 1, by which the jurisdiction is conferred, and not to the clause relating to the district in which suit may be brought. Judge Newman, therefore, denied a motion to remand a case brought in Georgia by a citizen of South Dakota against a citizen of South Carolina. Judge Newman cites, in support of the ruling that the section refers to the first part of section 1 alone, the language of the Chief Justice, in Railroad Co. v. Davidson, 157 U. S. 201, 15 Sup. Ct. 563, 39 L. Ed. 672; while the Chief Justice himself, in the Wisner Case, cites the same case as

holding the very opposite. This illustrates the very unsatisfactory situation in which this court finds itself in attempting to decide whether this particular case was removed by the presentation of the removal papers to the state court, and the docketing and injunction order of this court thereon.

Since the decision of the Wisner and Moore Cases there can be no question of the duty to remand on application of a plaintiff who has waived nothing, in the usual case, in the absence of any application to amend. But the narrow and unusual question here presented is whether a federal Circuit Court can possibly have any jurisdiction whatever of such a case as this until the plaintiff consents. If it can, then amendment may be permitted to show that jurisdiction actually exists unaided by consent or waiver; but if not, then a remand is inevitable. Powers v. Chesapeake, etc., Co., 169 U. S. 92, 18 Sup. Ct. 264, 42 L. Ed. 673; Crehore v. Ohio, etc., Co., 131 U. S. 240, 9 Sup. Ct. 692, 33 L. Ed. 144; Kinney v. Columbia, etc., Ass'n, 191 U. S. 78, 24 Sup. Ct. 30, 48 L. Ed. 193. Suppose a citizen of Maine sues a citizen of Vermont in the District of New Hampshire, and gets valid service of process. Defendant, relying on the Wisner and Moore Cases, makes default, and plaintiff takes judgment. Is the judgment valid or absolutely void? Again, suppose in this case Harding makes no general appearance in the federal court, but continues to prosecute the case in the state court, can he be punished for contempt of the docketing and injunction order? In view of the confusion surrounding this question arising from the decisions under the acts of 1887–1888 (Act March 3, 1887, c. 373, 24 Stat. 552, as amended by Act Aug. 13, 1888, c. 866, 25 Stat. 433 [U. S. Comp. St. 1901, p. 508]), it is refreshing to refer to the plain, satisfactory, and uniform construction of the similar clause of the original act of 1789, as stated by Chief Justice Marshall in Gracie v. Palmer, supra. And in view of such construction, and that a decision in favor of the jurisdiction may be readily reviewed, while a decision against it cannot, the power to amend the petition should be affirmed, and the petition to amend granted, if the individual defendants were merely formal parties defendant. That they were such seems clear to me from the cases of Geer v. Mathiesen Alkali Works, 190 U. S. 428, 23 Sup. Ct. 807, 47 L. Ed. 1122, and Lamm v. Parrott Co. (C. C.) 111 Fed. 241.

The venue or place of bringing suit in the federal courts is now governed mainly by section 1 of the acts of 1887–88, 25 Stat. 433; but partly by the original judiciary act of 1789, partly by section 8 of the act of March 3, 1875, c. 137, 18 Stat. 472, (U. S. Comp. St. 1901, p. 513), relating to suits to enforce legal or equitable liens or claims to property, or to remove incumbrances, liens, or clouds on titles, and partly by acts relating to special actions, such as patent suits, penalties, forfeitures, nonadmiralty seizures, etc. It has also been held in some of the federal courts that section 11 of the act of 1789 is still in force so far as concerns suits in the exclusive federal jurisdiction, on the theory that the acts of 1875 and 1887–88 relate only to suits in the concurrent jurisdiction of the state and federal courts, leaving suits in the exclusive federal jurisdiction to be governed by section 11 of

the act of 1789, providing that no civil suit shall be brought against an inhabitant of the United States in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving the writ. This rule was applied to copyright suits in Lederer v. Rankin (C. C.) 90 Fed. 449. The reasoning is not very satisfactory to my mind, because the language of section 11 just quoted occurs in the same section, which makes the federal jurisdiction concurrent with that of the states, and is no broader than the cognate provisions of the acts of 1875 and 1887–88. Section 9 of the original act gives exclusive admiralty jurisdiction to the District Court, in the district where the seizures are made, apparently leaving all other cases in the exclusive jurisdiction to be governed by section 11. It may therefore be properly held that all cases are now governed by the acts of 1887–88, amending the act of 1875, which amended section 11 of the act of 1789, except admiralty cases and those governed by special statutes, like patent cases, forfeitures, seizures on land, commerce cases, etc.

The acts of 1887–88 provide that no civil suit shall be brought before a Circuit or District Court against any person by any original process or proceeding in any other district than that whereof he is an inhabitant, but that in diverse citizenship cases it may be in the district of the residence of either plaintiff or defendant. In other words, in cases of federal questions, between citizens and aliens, citizens and foreign states, suits by the United States, by foreign consuls and vice consuls, and all other cases not founded on diversity of citizenship, the venue is controlled by the citizenship or inhabitancy of the defendant, and not by the district where he may be found; and in those of diverse citizenship by that of either party. It seems quite clear, therefore, that the settled construction as to jurisdictional allegations announced by Chief Justice Marshall in Gracie v. Palmer, applying to section 11 of the act of 1789, should be applied at least to the explicit amendments of that section in the acts of 1875 and 1887–88, so far as all cases other than those of diverse citizenship are concerned; and, by analogy, should also be applied to those cases as well.

A further question is raised as to the sufficiency of the statement in the removal petition of a separable controversy. It is usual in such petitions, and generally considered necessary, to allege the nature of the controversy; but if it appears from the record that such a controversy actually existed, it is enough. This court, by its docketing and restraining order of November 6, 1907, took jurisdiction of the case, thus sustaining its jurisdiction. This it had the power to do. That order was made more than two terms since, and cannot now be reviewed in this proceeding or any other in this court. This was decided in Des Moines Nav. Co. v. Iowa Homestead Co., 123 U. S. 552, 8 Sup. Ct. 217, 31 L. Ed. 202, approved by the Supreme Court in Chesapeake & O. R. Co. v. McCabe (by decision filed April 6, 1909) 213 U. S. 207, 29 Sup. Ct. 430, 53 L. Ed. ——.

I think, therefore, that the petition to amend should be granted. If it were disallowed, and the case remanded, there could be no review. Ex parte Pennsylvania Co., 137 U. S. 451, 11 Sup. Ct. 141, 34 L. Ed. 738; Missouri Pac. R. Co. v. Fitzgerald, 160 U. S. 556, 16 Sup. Ct.

380, 40 L. Ed. 536. Even where the state court proceeds to judgment against defendant, the question of removal cannot be reviewed. Whitcomb v. Smithson, 175 U. S. 635, 20 Sup. Ct. 248, 44 L. Ed. 303. On the other hand complainant has two remedies, mandamus in the Supreme Court to compel remand, or, if a decree goes against him, he may have the question reviewed on appeal. Ex parte Wisner, supra.

Leave to file the amended petition is granted.