THE CITY OF DENVER v. THE DENVER CITY CABLE RAILWAY COMPANY.

THE CITY OF DENVER v. THE DENVER CITY CABLE RAILWAY COMPANY.

DENVER—FRANCHISE—POLICE POWER.

The ordinance of Denver granting a franchise to a street car company provided that the company, its successors and assigns, should construct culverts in such manner and at such points on its lines as the city council should require and designate, which the company did. The ordinance also reserved power in the city council "to pass any ordinance with reference to the operation of said cable railway which the comfort of the inhabitants of said city, or the safety of passengers upon said railway may require, reserving also the police and legislative powers and functions with respect to the streets and avenues that may be used and occupied by said railway." Afterwards an ordinance was passed that the company should, at its own expense, "furnish, construct, put in place and maintain, * * * all necessary conduits and syphons," for carrying surface water across or under the streets at all points where its tracks cross any street, etc., such conduits and syphons to be of such material, size, extent and construction as the city engineer might direct, etc., which provision was also complied with by the company. A subsequent ordinance provided that "any unclean, leaking, foul, unsafe and dangerous, defective or filthy drain, ditch, tank or gutter, etc., found in the limits of the city, shall be deemed a nuisance."

*Held*, that the ordinance, in so far as it attempted to impose new and additional burdens, was invalid, and that the imposition upon the company of the duty of keeping these syphons clean was not within the police power of the city.

*Error to the County Court of Arapahoe County.*

THESE two cases were commenced in the police magistrate's court in the city of Denver, and taken on appeal to the county court. In the first, the complaint charged the defendant with the violation of a city ordinance, in that " said company did fail and refuse to maintain and keep clean certain syphons and sewers crossing under its tracks on certain streets in the city of Denver; " and was brought under section 2 of ordinance No. 27, of the series of 1889, which, *inter alia*, provides :

" Any person, persons, company or corporation who shall lay any track or tracks for a railway of any kind within the city of Denver, where the same cross or extend along the public highways or streets of said city, shall, at their own expense, furnish, construct, put in place, and maintain * * * all necessary conduits and syphons for carrying surface water across or under the streets and avenues so occupied and used, at any and all points where said track or tracks cross any street or avenue; all such conduits and syphons to be of such material, size, extent and construction as the city engineer may direct; and all such work to be done under the supervision, and to the entire satisfaction, of said city engineer."

In the second case the defendant company were charged with committing and maintaining a nuisance, in this, to wit:

" That it kept and maintained certain unclean and filthy drains and syphons under its railway tracks, at the intersection of certain streets," in violation of section 56 of ordinance No. 44 of the series of 1893, which provides :

" Any unclean, leaking, foul, unsafe and dangerous, defective or filthy drain, ditch, tank or gutter ; or any leaking or broken slop, garbage or manure box, or receptacle of like

character, whenever or wherever found in the limits of the city of Denver, shall be deemed a nuisance."

The cases were tried together in the county court, and judgment rendered in favor of the company. To this judgment the city prosecutes these writs of error.

Mr. A. B. SEAMAN and Mr. HARRISON ALLEN, for plaintiff in error.

Messrs. WOLCOTT & VAILE, for defendant in error.

MR. JUSTICE GODDARD delivered the opinion of the court.

The cases were argued and submitted together, and involve substantially the same question, to wit, whether the railway company is liable for the foul and unsanitary condition of certain syphons or catch basins connected with culverts constructed by it, under the direction of the city.

The facts out of which the controversy arose are undisputed, and substantially as follows: The defendant company is a corporation organized under the laws of Colorado, and operating street railways in the city of Denver, under and by virtue of a franchise granted by ordinance 36 of the series of 1888, sections 8 and 9 of which are as follows:

"SEC. 8. That The Denver City Cable Railway Company, its successors and assigns, shall construct culverts in such manner and at such points on its lines as the city council shall require and designate."

"SEC. 9. The city council hereby reserves the right to pass any ordinance with reference to the operation of said cable railway which the comfort of the inhabitants of said city, or the safety of passengers upon said railway may require, reserving also the police and legislative powers and functions with respect to the streets and avenues that may be used and occupied by said railway."

In compliance with the requirements of section 8, the Railway Company constructed permanent culverts passing

under the surface of the street, and under its railway tracks, which terminate at each end in a syphon or catch basin, as required and designated by the city authorities. These syphons, located at each end of the culverts, consist of round or· well-like receptacles, whose bottoms are considerably below the bed of the culverts. On account of their construction, the surface water passing along the gutters would necessarily fill that portion of the catch basin below the level of the culvert before it would pass off through the culvert; and the sediment, débris and washings from the street, being of greater specific gravity than the water, would settle in the bottom of these basins, and in the course of time become decomposed and unsanitary; and while the culverts were entirely sufficient to carry off the water passing into these syphons, yet the syphons themselves, unless cleaned out, would become filled with foul and unclean matter. It is admitted that they were in this condition, and that the company had refused to clean them out, at the time these actions were instituted.

It is insisted on behalf of the city that section 2 of ordinance 27, series of 1889, providing that the company shall, at their own expense, "furnish, construct, put in place and maintain * * * all necessary syphons," etc., is a valid exercise of its police power, and of the right reserved by section 9 of the franchise ordinance of 1888; and imposes upon the company the duty of keeping the syphons clean, as well as of constructing them in the first instance.

On the part of the company it is claimed that the language used in the section is not susceptible of such construction; and if it can be so construed, the ordinance is invalid, because it impairs the obligation of its contract with the city, in that it imposes a new burden upon the company, and one that is in no way connected with the operation of its railway, or within the intendment of the reservation in section 9 of the franchise ordinance.

We think that both of these positions are well taken. The maintenance or existence of these syphons have no reference

to, or connection with, the operation of the railway. They are not a part of the company's property or its system, but are a part of, and incident to, ordinary street improvement, and the defendant in error has no more interest in them than any other person using the street. Not having assumed the burden as a consideration of its franchise, it therefore follows that the imposition of the duty upon it of keeping these particular syphons clean does not fall within the legitimate exercise of the police power of the city. In so far as the ordinance in question undertakes to impose such new and additional burdens upon the company, it is invalid; and if we assume that the company constructed the syphons under the direction of the city engineer, under and in accordance with the provisions of the ordinance of 1889, and are therefore estopped from asserting its invalidity, as contended by counsel for plaintiff in error, we still think that the language used therein is not susceptible of the construction contended for by the city, but that the signification to be given to the word "maintain," as used in the ordinance and applied to the syphons in question (which are intended to designate the catch basins placed at each end of the culverts, and do not include the culverts or conduits connecting them), is to keep in repair or replace, and does not mean the keeping of them clean and in a sanitary condition, since a failure to keep them in such condition in no way impairs their use or impedes the flow of water through the culverts. In either view, the company is not amenable to the charge preferred in the first case. It necessarily follows that since the syphons complained of are not the property of the defendant, nor in any way connected with the operation of its business, and were not constructed for its use and benefit, and being in no way responsible for their unsanitary condition, the company cannot be held guilty of maintaining a nuisance, and was properly acquitted on the second charge. The judgment of the county court is accordingly affirmed.

*Affirmed.*