[No. 3748.]

Donahue et al. v. Morgan.

1. Cities and Towns—Annexed Territory.
In the absence of constitutional or statutory provisions to the contrary, when annexation of territory is legally made to a municipality, the tract thereby annexed becomes a part of the city itself, and the people resident therein become entitled to the same rights and privileges, and subject to the same municipal burdens, as the residents of the original city.

2. Same—Waterworks.
Under Mills' Ann. Stats. sec. 4403, paragraph 68, municipalities may either construct their own system of waterworks, or may grant a franchise therefor to a private company. Under this legislation a city may own its own waterworks for the purpose of supplying a part only of its inhabitants, or only a portion of its territory, and grant to a company a franchise to supply others of its inhabitants, or to other parts of its territory.

3. Same—Consolidation.
The plan of consolidation of three municipalities into the present city of Pueblo, particularly that part thereof relating to the control and management of the waterworks,—discussed at length, and held constitutional, and its meaning and scope explained.

*Appeal from the District Court of Pueblo County.*

This is an action brought by the plaintiff, as a resident taxpayer of the city of Pueblo, against the defendants as

"trustees of the Pueblo waterworks" to restrain them, as such board, from paying any moneys for the repairs and enlargement of said waterworks under a contract previously made by and between said board and C. F. McCarthy and F. P. Lannon, who are joined as defendants in the action.

The district court granted an injunction in accordance with the prayer of the complaint, and from the decree awarding such relief the defendants have appealed.

There is no substantial disagreement as to the facts of the case, the questions at issue being legal ones. The following statement will elucidate the matters involved:

Prior to the year 1885, there existed in Pueblo county three separate municipalities incorporated under the general laws of this state, whose territory was practically contiguous, viz: the city of Pueblo, the town of Central Pueblo, and the city of South Pueblo. The Arkansas river separates these municipalities, the two former being on the north, and the latter on the south, side of the river.

The city of Pueblo owned and operated its own system of waterworks; Central Pueblo got its supply from wells and through the primitive method of hauling the same by wagons to the users thereof, while the city of South Pueblo was supplied with water by a private corporation, to which, in April, 1885, a franchise for that purpose, to run for the period of twenty years, was granted by its city council.

For a number of years unsystematic and abortive attempts to effect a consolidation of these three municipalities had been made, and during the early part of the year 1885, a well organized and concerted movement was made in this direction, and to this end there was secured the passage of an act by the general assembly (Session Laws, 1885, p. 372, *et seq.*) providing, *inter alia*, for the consolidation of two or more contiguous towns or cities.

Section 7 of this act in general terms provided for the appointment, by the city counsel or board of trustees of each of the municipalities desiring to enter into such a consolidation, of three commissioners to arrange and report to such

councils or boards of trustees respectively the terms and conditions upon which the proposed consolidation should be made.   The only specific direction provided for in the statute was the number of wards into which the consolidated municipality should be divided, leaving to the respective commissioners the arranging of all of the other terms and conditions.   If these different boards of commissioners agreed upon a general plan, they were to report to their respective councils or boards of trustees, and if, in turn, the plan was approved by the latter, it was to be submitted for approval of the electors of the respective municipalities at an election called for that purpose, and if a majority of the electors of each voted in favor of the plan, it thereupon became effective, and the consolidation complete.

By section 8 of the act, if either of the municipalities was a city, the consolidated corporation would become a city of the highest class to which any of the cities thus consolidated belonged prior to the consolidation.   Section 16 provided that all property, real and personal, belonging to each municipality should, immediately upon the accomplishment of the consolidation, vest in and become the property of the consolidated town or city, *unless the agreement for consolidation otherwise provided.*

Acting under the authority of this act, the three municipalities above mentioned were, in accordance with its provisions, and during the year 1886, consolidated into one city, known as the city of Pueblo, which, ever since, has existed as a city of the second class.   The plan of consolidation agreed upon consisted of fourteen separate articles; but the only ones pertinent to the present discussion are those designated as articles 10, 11, 12, 13 and 14 and are as follows, to wit:

Article 10 vests the title of all real property owned by the city of South Pueblo at the date of consolidation in the aldermen from the wards south of the river elected at the first election held in the consolidated city, and their successors in office, and designates these aldermen as the "board

of public works," and gives them power over such property similar to that given the "trustees of the Pueblo water-works" in article 11, below.

## "ARTICLE XI.

"The title to the real estate and to the Pueblo water works, including mains, pipes, reservoirs, leases, lands and privileges of every kind belonging thereto, owned by the present city of Pueblo at the date of consolidation, shall vest in the alder-men in the consolidated city from the wards north of the Arkansas river, and their successors in office, as trustees for the use and benefit of the present city of Pueblo and the inhabitants and property therein, who shall be known as 'Trustees of the Pueblo Water Works,' and a majority of them shall be a quorum, and competent to bind the whole number by any act or deed. The said trustees shall have the care, repair, operation, management and control of the Pueblo water works, real and other property above described. All moneys received from water rents, all income from real estate, or proceeds of sale of real estate, shall be applied to the payment of operating expenses, and maintenance, interest and indebtedness, and extension of water mains, and the pay-ment of bonded indebtedness of the city of Pueblo. The refunding water bonds of the city of Pueblo, authorized by ordinance of June 2, 1884, and executed June 10, 1884, and made ready for delivery in exchange for the several install-ments of water bonds falling due June 10, 1886, and annu-ally thereafter, shall, when delivered by said trustees, be as valid and binding upon all persons and property within the present city of Pueblo, as if delivered by the city of Pueblo, and the authorities thereof, and as if this consolidation had never taken place.

"For the due execution of this trust the said trustees shall have and exercise the same power as possessed by the city of Pueblo for supplying water and control of real estate, and all ordinances and regulations of the city of Pueblo now in force executing said powers, shall remain in force for the

execution and government of this trust, until modified by said trustees, and the city council of the consolidated city shall, when so requested by said trustees, pass any ordinance or take any action or step necessary to aid said trustees in obtaining or supplying water to that portion of the consolidated city lying north of the Arkansas river, or to protect the Pueblo water works, or its pipes, mains, ditches, lands or reservoirs or any real or any other property of this trust.

## "ARTICLE XII.

" The consolidated city shall pay for the water used after consolidation in the different parts of said consolidated city, for fire purposes and for irrigating trees in the public streets. The same price for each fire plug shall be paid in that portion of the consolidated city lying on the north side of the Arkansas river, as in that portion lying on the south side of said river.

## " ARTICLE XIII.

" Out of the moneys received from said consolidated city for the use of fire plugs connected with the water works now owned by the city of Pueblo, the said aldermen representing wards lying north of the Arkansas river shall, as such trustees, extend the water mains into Central Pueblo, as may be reasonably required, and the price to citizens living within the boundaries of what is now Central Pueblo shall be no greater sum for water for private use than shall be charged at the same time to citizens living within the limits of the present city of Pueblo.

## " ARTICLE XIV.

" The respective water works and system of water supply now existing respectively in the cities of Pueblo and South Pueblo shall remain to all intents and for all purposes intact, the same as though the consolidation herein contemplated was never effected.

" The water works now owned by the city of Pueblo shall not, nor shall any water works which may be hereafter owned or controlled by the consolidated city during the lifetime of

the contract with the South Pueblo Water Company (here-after referred to) furnish or supply any water to any portion of the consolidated city lying south of the Arkansas river, nor shall the mains or other works belonging to said city of Pueblo, or owned or controlled by said consolidated city, be extended into or upon any part of the territorial limits of said consoli-dated city lying south of said river, nor shall it be lawful for the said The South Pueblo Water Company, to extend its mains or system of supply of water to any part or portion of said consolidated municipality lying north of said river.

" The contract entered into between The South Pueblo Water Company, a corporation duly organized and existing under the laws of the State of Colorado, and the said city of South Pueblo, by virtue of an ordinance adopted by the city council of the said city of South Pueblo, and approved on the 9th day of April, A. D. 1885, entitled ' An ordinance relating to The South Pueblo Water Company, and prescrib-ing the terms upon which said company shall supply water,' is hereby ratified and confirmed to all intents and for all purposes contemplated by said contract; and the said The South Pueblo Water Company is hereby guaranteed all and singular the rights, privileges, powers, franchises and immu-nities conferred and expressed in said ordinance as fully and effectually as though the said consolidation herein contem-plated had never been effected, and that during the lifetime of the contract aforesaid, as specified in said ordinance, the said water company shall have the exclusive rights and priv-ilege of extending its mains and of supplying water to, and collecting rents and tolls therefor, from that portion of said consolidated municipality lying south of said Arkansas river, according to the prices fixed and specified in said contract."

Messrs. PATTISON, WALDRON & DEVINE, and Mr. E. E. HUBBELL, for appellants.

Messrs. ARRINGTON & McALINEY and Mr. M. G. SAUN-DERS, for appellee.

MR. JUSTICE CAMPBELL delivered the opinion of the court.

In the opening brief of counsel for appellants, considerable space is devoted to an argument in support of the propositions that the act of 1885 is constitutional, and that the plan of consolidation agreed upon by the respective municipalities was strictly in accordance with the provisions of that act. These questions apparently were mooted at the trial below, but appellee in his brief in this court concedes the former, without qualification, and the latter, if his construction of the plan is adopted as the correct one. So that the questions for determination here are narrowed down to the true meaning and scope of the plan of consolidation, particularly as to the power of these defendants in and about the waterworks formerly owned by the city of Pueblo.

Upon the part of the appellee (plaintiff below) it is contended, *first*, that the appellants (trustees) do not possess the general power to make the contracts in question, because the improvements complained of are to be made outside the territorial limits of the former city of Pueblo, and are principally for the benefit of additions which had become a part of the newly created city of Pueblo after the consolidation had taken place. *Second*, that if the trustees had such general power to contract within the proper limits, yet these contracts must be held invalid because the trustees, if allowed to carry them out, would thereby contract a floating indebtedness, and pledge the public revenue for an indefinite term of years, and in doing so would violate the terms of article 11 which, properly construed, is an inhibition upon the power to contract an indebtedness of the character in question and in the manner proposed.

To the contrary of these contentions the appellants assert that, both under the act of 1885 and the plan of consolidation itself, which is in all respects authorized by said act, the defendants in the capacity in which they are acting have the power to make the improvements in question, and to extend the water mains, not only into the territory embraced

within the former city of Pueblo, but into such additions, and all additions to the consolidated city lying on the north side of the Arkansas river, made since the consolidation took effect. To this end defendants also claim the implied power to employ all reasonably proper and necessary means to carry out the specific object of extending water mains.

Before proceeding to a discussion of the case upon its merits, it is proper to say that the appellants raise numerous objections to the right of the plaintiff to bring and prosecute this action, which would be worthy of serious consideration were it not that, in our view, the defendants' contention may, upon other grounds, be sustained by a fair interpretation and construction of the articles themselves. We must not, however, be understood as holding that, in this form of action, the plaintiff is entitled to the form of relief which he seeks, or that by laches and estoppel he has not lost the right to all kinds of relief to which he might have been entitled in a proper form of action, or in this action had it been opportunely brought. But to save useless discussion and prevent further litigation, we proceed to the decision of the case upon the merits.

It being conceded that the act of 1885, is constitutional, and also the plan of consolidation as agreed upon by the respective commissioners, governing bodies and electors of these three municipalities, the question recurs, what are the powers which these defendants possess in relation to the system of waterworks, the title of which the plan vests in them? As aldermen in the consolidated city of the wards north of the river, they are, by article 11, designated as "trustees of the Pueblo waterworks." It is contended by the appellee that these defendants are merely trustees in the strict sense of that term; the appellants contending that they are, by this article, constituted a public *quasi* corporation which has for its object the discharge of the specific public, or municipal, duty of supplying water to that portion of the consolidated city north of the river.

We are of opinion that the appellants' contention is sound,

and that under section 2 of article 15, and section 35 of article 5 of the constitution, it is within the power of the general assembly to create such an agency or corporation, as a part of the municipal machinery, even for municipal corporations. But, so far as concerns the question before us, we cannot see that it makes any difference whether the defendants are acting as mere trustees, charged with a public duty, or as a municipal agency, or public *quasi* corporation organized under the general laws. The reasoning in the proceeding *In re Senate Bill*, 12 Colo. 188, justifies this conclusion. See, also, *Cook v. Port of Portland*, 20 Ore. 580, and cases cited; *Carson v. St. Francis L. District*, 59 Ark. 513. By this same article 11 it is provided that they " shall have the care, repair, operation, management and control of the Pueblo waterworks, real and other property above described." The appellee would interpret this language as restricting the defendants to the extension of mains and all work of whatever character within the territorial limits of the former city of Pueblo; and would further limit all work, wheresoever done, to that which the revenues received from water rents would liquidate.

We cannot agree with any such interpretation. There is nothing in the language which requires it. On the contrary, as we think, a fair interpretation would bring within the provisions of this article additions to the new city whenever made. The general rule is that, in the absence of constitutional or statutory provisions to the contrary, when an annexation of territory is legally made to a municipality, the tract so annexed thereby becomes as much a part of the city itself as any part of the original tract, and the people resident therein become entitled to the same rights and privileges, and subject to the same municipal burdens, as the owners of property in the original city itself. *U. S. v. Memphis*, 97 U. S. 284; 1 Beach on Pub. Corporations, § 412; *St. Louis Gas Light Co. v. City of St. Louis*, 46 Mo. 121.

It certainly was within the contemplation of those who drafted the plan, and of the electors who voted to ratify

it, that the consolidated city would grow; in fact, one of the prime considerations that moved the inhabitants of these cities to consolidate doubtless was that thereby the growth of the city would be facilitated. It is a matter of common knowledge that one of the ordinary methods of increasing the population of a city is to make annexations of inhabited territory. It is not reasonable, therefore, to suppose that such additions would be left without any adequate water supply, or that facilities used by the consolidated city north of the river might not properly be extended to the new-comers. On the contrary, it must have been understood by the inhabitants of the original city that water mains might be extended into such new parts of the city whenever the necessities therefor arise.

As to Central Pueblo, theretofore existing as a separate town, express provision was made in article 13 for supply-ing it with water from the waterworks of the former city of Pueblo. Article 11 clearly authorizes defendants, as a mu-nicipal agency, and as representing the consolidated city in the management of the north side waterworks, to extend the mains and supply water to the additions that might be made to the consolidated city, and lying on the north side of the river. In so holding we are abundantly satisfied that we are carrying out the wishes and the distinct understanding of all the parties concerned, and are giving to the language employed to express the agreement of the municipalities in question its plain meaning, and at the same time, observing every constitutional and statutory provision applicable to the case in hand.

But it is further urged that the improvements and exten-sions in question will cost the sum of $50,000; that not only have the defendants no money with which to pay for them from water rents (their only source of revenue), but they have no power to levy taxes to defray the cost of the work, and, if paid for at all, it must be as the result of the creation of an entirely illegal floating indebtedness, or by the pledg-ing for an indefinite length of time of their only available

revenue. We are told that the water rents must be applied to the specific objects enumerated in article 11, and that the cost of extending the system to the additions is not one of these.

But we have already held to the contrary upon the latter point. After a careful examination of the pleadings and evidence, we are satisfied that the power of the defendants as a board to levy taxes upon the property of the consolidated city north of the Arkansas river for meeting the costs of the improvements in question is not necessarily, or at all, involved in this case. The cost of the work covered by the contracts will probably not exceed $40,000. To pay this there is no satisfactory proof that it will be necessary to levy any taxes, either by the defendant trustees, if they have that power, or by the city itself at their request. There will be time enough to settle the question as to the power of the defendants to levy taxes when that question arises and when it appears that the defendants will be unable to pay the entire cost of the work out of the revenues received from water rents.

It is no answer to say that the payment of this work will take from the other enumerated objects, for none of these has a priority over the one in question; and there is no showing that the defendants will not be able, out of the water rents, to discharge all of the obligations which article 11 imposes upon them the duty to perform, whenever and as soon as they mature. So far as we are advised, the revenue from the water rents, and at the disposal of the defendants, will be adequate to meet all their expenditures.

Nothing can be clearer than that the municipalities concerned intended to protect the franchise granted by the city of South Pueblo to a private corporation; and it is equally clear that the design was to give to the defendants as full and ample control and power over the waterworks belonging to the former city of Pueblo as that city itself would have had, had no consolidation taken place. It is also evident that the plan contemplated that the consolidated city,

as such, and through its city council, should not have any voice in the management or distribution of water and through pre-existing systems in any part of the city, certainly until the franchise granted by the city of South Pueblo to the private corporation expired by limitation of law. That it was clearly within the power of the legislature to make such a provision scarcely needs an argument, and that the legislature might, in general terms (as it did), permit such arrangement to be made through the vote of the respective municipalities is not seriously disputed. Such legislation would not create a new class of municipal corporations, for the act applies to any contiguous cities desiring to consolidate. But under 2 Mills' Ann. Stats., sec. 4403, par. 68, municipalities may either construct their own system of waterworks, within or without their limits, or may grant a franchise therefor to a private company. *Warner v. Town of Gunnison*, 2 Colo. App. 430. We see no objection, under this legislation, to any city owning its waterworks for the purpose of supplying a part only of its inhabitants, or only a portion of its territory, and granting to a corporation the franchise to supply water to others of its inhabitants, or to other parts of its territory. In effect, this was what was done under the plan of consolidation.

The three separate municipalities each had a different method of supplying its inhabitants with water; or rather the city of South Pueblo had granted to a private company this right covering all of its territory, while the city of Pueblo owned its own system. The franchise granted by the former could not be revoked. In this condition of affairs, the plan of consolidation provided for a continuance of these different systems in the consolidated city such as theretofore existed in the two separate municipalities of South Pueblo and the city of Pueblo. The mere fact that the control of the system on the north side of the river was vested in a body other than the city council does not contravene any statutory or constitutional provision.

Thus far we have not discussed the point made by the

appellee that the construction which we have placed upon these articles of consolidation virtually defeats a merger: of the three former municipalities into one.  That issue is not present, though appellee's counsel ingeniously seeks to thrust it into this case.  Our holding is equivalent to nothing of the sort.

It follows from the foregoing that the judgment below must be reversed.  It is so ordered, and with directions to the district court to dismiss the action with costs against the plaintiff in both courts.

*Reversed.*