McPHEE & McGINNITY CO. v. UNION PAC. R. CO. et al.

SAYRE NEWTON LUMBER CO. v. SAME.

(Circuit Court of Appeals, Eighth Circuit. November 27, 1907.)

Nos. 2,644, 2,645.

1. COURTS—FEDERAL COURT JURISDICTION—PARTY MAY WAIVE VENUE OF SUIT.

The right of a party to suit in the district of the residence of either the plaintiff or the defendant is a personal privilege which he may waive by a trial, demurrer, answer, or a general appearance without making the objection.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 810, 815.

Of right as to district in which suit may be brought, see note to Memphis Sav. Bank v. Houchens, 52 C. C. A. 192.]

2. FRANCHISE—LICENSE—CERTAIN RIGHTS WHICH CONSTITUTE RESPECTIVELY.

A right or privilege which is essential to the performance of the general function or purpose of the grantee, and which can be given by the sovereignty alone, such as a right or privilege of a corporation to operate a commercial railroad, a street railroad, city waterworks, gasworks, and to collect tolls therefor, is a franchise.

A right or privilege not essential to the general function or purpose of the grantee, and of such a nature that a private party might grant a like right or privilege over his property, such as a revocable permission to occupy or use a portion of some public ground, highway, or street, is a license, and not a franchise.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Franchise, § 1.

For other definitions, see Words and Phrases, vol. 3, pp. 2929–2942; vol. 5, pp. 4133–4141; vol. 8, pp. 7706, 7766.]

3. CONSTITUTIONAL LAW—CONSTITUTION—CONSTRUCTION BY FIRST LEGISLATIVE BODY PERSUASIVE.

The interpretation given to a Constitution by the first legislative body which acts thereunder is a contemporary construction, which should be treated with great deference.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Constitutional Law, §§ 14, 15.]

4. SAME—SENSIBLE CONSTRUCTION PREFERRED TO IMPRACTICABLE OR UNREASONABLE ONE.

A rational practicable interpretation of a Constitution or statute should be preferred to one which makes it impracticable or unreasonable.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Constitutional Law, §§ 9–11.]

5. MUNICIPAL CORPORATIONS—ARTICLE XX OF CONSTITUTION OF COLORADO—CHARTER OF DENVER—POWER OF CITY COUNCIL TO GRANT REVOCABLE RIGHT OF WAY OVER STREET TO RAILROAD COMPANY.

Article 20 of the Constitution of Colorado prohibited the city of Denver from granting any franchise relating to any street, alley, or public place, without an approving vote of the qualified taxpaying electors of the municipality.

The charter of Denver adopted pursuant to this article empowered its council to grant a revocable license or permit at any time to any street, alley, or public place in that city.

The council of the municipality granted by ordinance to the Union Pacific Railroad Company, a corporation empowered by the laws of a state to construct, maintain, and operate a railroad into and through the city, a revocable permission to lay, maintain, and operate certain spur railroad tracks upon Blake street in that city for the distance of eight blocks to enable those who should own or occupy warehouses and other business houses to be constructed upon that street to transport their commodities to and from these houses in cars. The ordinance provided that this permission was revocable at any time by the city, and that if it revoked it or any part of it the city should pay back to the railroad company such part of the amount which that company had expended, not exceeding $67,000, in paving and sewering the part of Blake street to which the revocation should pertain. *Held*:

The privilege thus granted was a revocable license and not a franchise. The council of Denver was not prohibited from granting it by article 20 of the Constitution of Colorado, and it was empowered to do so by section 269 of the charter of Denver, and the license was valid.

6. SAME—ORDINANCE—WHERE DIVISIBLE, VALID PART MAY STAND THOUGH VOID PART FALLS.

When a part of a divisible ordinance or statute is within, and another part is without, the power of the body which enacts it, the former is valid and may be enforced, although the latter is void, unless it appears from a consideration of the entire ordinance or statute that it would not have been enacted without the part which is void.

This license was to a railroad company, its successors and assigns. If the grant to the successors and assigns was void, that to the railroad company was still valid.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, §§ 248-251.]

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the District of Colorado.

Henry F. May (John S. Macbeth, on the brief), for appellants.

Clayton C. Dorsey and William V. Hodges (John N. Baldwin and H. A. Lindsley, on the brief), for appellees.

Before SANBORN and VAN DEVANTER, Circuit Judges, and PHILIPS, District Judge.

SANBORN, Circuit Judge. These are appeals from decrees which dismissed bills in equity brought by the appellants, who were owners of property abutting upon Blake street, between Nineteenth street and Twenty-Seventh street, in the city of Denver, to enjoin the Union Pacific Railroad Company, a corporation, from constructing railroad tracks and operating engines and cars upon that portion of the street, and to prohibit the city of Denver from permitting the railroad company to do so under an ordinance of that municipality which by its terms granted the company such permission.

The main question in the case is whether or not the city council of Denver had the power under the Constitution of the state of Colorado and the charter of the city to make this grant without the approving vote of a majority of the qualified taxpaying electors of the city. Counsel for the appellants contend that it had no such power, and while in their bill they averred that the ordinance was void (1) because it authorized the acceptance of a loan by the city contrary to certain provisions of the charter, (2) because it was not referred to the city attorney for his opinion before its passage, (3) because it was not legally advertised and delayed after its introduction and before its passage, (4) because it deprived the board of public works of its right to award the contract for the paving and sewering of the portion of the street on which the tracks were permitted, and of its right and power to have this part of the street paved and sewered by day labor, and of its right to assess the cost thereof upon the property benefited, (5) because the title of the ordinance discloses but one subject while it treats of two, and for other reasons, yet they have waived all these objections in this court, because, if they are well founded, the city council could, and undoubtedly would, remove them by the passage of another ordinance, and they stand here upon the proposition that the grant to the railroad company was beyond the powers of the city council, and upon that alone, and they concede that, if the council had the power to make the grant, the appellants are precluded from injunctive relief, and that their only remedies are actions at law for the damages they suffer.

Counsel for the respondents first contend that the court below was without jurisdiction of the case of McPhee & McGinnity Company, because that company was a corporation of the state of Nevada, and

the Union Pacific Railroad Company was a corporation of the state of Utah, so that the suit was not brought in the district of the residence of the plaintiff or of all the defendants (Act March 3, 1875, c. 137, § 1, 18 Stat. 470 [1 U. S. Comp. St. 508]), and they cite Greeley v. Lowe, 155 U. S. 58, 68, 15 Sup. Ct. 24, 39 L. Ed. 69, and Ex parte Wisner, 203 U. S. 449, 27 Sup. Ct. 150, 51 L. Ed. 264, in support of their position. But the diversity of citizenship and the amount in controversy conferred jurisdiction upon the court below, subject to the right of the respondents to a determination of their controversy in the district of the residence of the plaintiff. or of the defendants. This right, however, was not, like diversity of citizenship, an indispensable prerequisite to the jurisdiction of the court, but a mere personal privilege which they might waive, and which by interposing general demurrers to the bill, which were sustained before they suggested this objection, they did waive. Texas & Pacific Ry. Co. v. Cox, 145 U. S. 593, 12 Sup. Ct. 905, 36 L. Ed. 829; Martin v. B. & O. R. R. Co., 151 U. S. 673, 678, 14 Sup. Ct. 533, 38 L. Ed. 311; Interior Cons. & Imp. Co. v. Gibney, 160 U. S. 217, 219, 16 Sup. Ct. 272, 40 L. Ed. 401; Toland v. Sprague, 12 Pet. 300, 330, 9 L. Ed. 1093; Ex parte Schollenberger, 96 U. S. 369, 378, 24 L. Ed. 853; Charlotte National Bank v. Morgan, 132 U. S. 141, 145, 10 Sup. Ct. 37, 33 L. Ed. 282; St. L. & S. F. Ry. Co. v. McBride, 141 U. S. 127, 130, 11 Sup. Ct. 982, 35 L. Ed. 659; Southern Express Co. v. Todd, 56 Fed. 104, 109, 5 C. C. A. 432, 437; Van Doren v. Pennsylvania R. Co., 93 Fed. 260, 35 C. C. A. 282; Hoover & Allen Co. v. Columbia Straw Paper Co. (C. C.) 68 Fed. 945; Scott v. Hoover (C. C.) 99 Fed. 247, 249; Platt v. Massachusetts Real Estate Co. (C. C.) 103 Fed. 705, 706; U. S. Fidelity & Guaranty Co. v. Board of Com'rs, 145 Fed. 144, 146, 76 C. C. A. 114, 116; Shanberg v. Fidelity & Casualty Co. (C. C. A.) 158 Fed. 1, filed November 4, 1907.

After discussion of this question of jurisdiction, counsel argue that the decree below should be affirmed, (a) because the tracks have been laid and a reversal would be ineffectual, (b) because the usurpation of a franchise may be remedied by an action under chapter 27, § 289, of the Civil Code of Colorado (Mills' Ann. Code), or by the writ of quo warranto only, (c) because the appellants are entitled to no injunctive relief even if the passage of the ordinance was ultra vires of the city council, and (d) because the city council was vested with the requisite authority to grant the permission in controversy and the railroad company has the right to construct and operate its railroad thereunder upon the portion of the street in controversy. As the decision of the main question in favor of the respondents will render the other legal issues they urge upon our consideration immaterial, and counsel for the appellants waive the other grounds for relief they pleaded, we will first consider the issue of law which that question presents.

On March 18, 1901, the Legislature of Colorado passed an act to submit to the qualified voters of the state an amendment to its Constitution whereby the inhabitants of the city of Denver were authorized to frame and adopt a charter for that city, and at the next general election that amendment was adopted by the electors of the state, and it is

now numbered and designated "Article 20, City and County of Denver." Sess. Laws Colo. 1901, pp. 97–102, c. 46. On March 29, 1904, the electors of Denver adopted a charter for that city pursuant to this amendment. The amendment contained this inhibition:

"No franchise relating to any street, alley or public place of the said city and county shall be granted except upon the vote of the qualified taxpaying electors, and the question of its being granted shall be submitted to such vote upon deposit with the treasurer of the expense (to be determined by said treasurer) of such submission by the applicant for said franchise."

The charter contained these provisions:

"Sec. 265. No franchise relating to any street, alley or public place of the city and county shall be granted except upon the vote of the qualified taxpaying electors, and the question of its being granted shall be submitted to such vote upon deposit with the treasurer of the expense (to be determined by the treasurer) of such submission by the applicant for said franchise."

"Sec. 269. The council may grant a license or permit at any time, in or to any street, alley or public place, provided such license or permit shall be revocable at any time, and such right to revoke shall be expressly reserved in every license or permit which may be granted hereunder."

In May, 1906, the Union Pacific Railroad Company sought to obtain at an election the right and privilege to lay tracks and to operate a railroad upon Blake street in front of the appellants' property, but its request was defeated by a majority vote of the qualified taxpaying electors of the city of Denver. In February, 1907, the city council of Denver passed, and its mayor approved, an ordinance by the terms of which the city and county of Denver granted to the railroad company, its successors and assigns, "a license and permit to construct, lay, maintain and operate certain railroad tracks" upon the part of Blake street which has been described, in the manner specified in the ordinance, in consideration that the company would pay the cost, not exceeding $67,000, of paving this part of the street and of constructing a storm sewer and catch-basins therein. Section 8 of this ordinance provided that "said license and permit shall be revocable by the council at any time, and such right to revoke is hereby expressly reserved," and that whenever this license, or any part of it, should be revoked, the amount of money paid by the railroad company for the paving and sewering of that part of the street to which such revocation should apply should be paid back to the company without interest, and the company should remove its tracks from and restore that part of the street to a good and serviceable condition. This railroad company had an established line of railroad through the city of Denver, and the tracks upon Blake street authorized by the ordinance were spur tracks from its main track for the benefit of parties who expected to build warehouses on vacant property abutting upon that street. The ordinance granted permission to the company to lay a track upon each side of the part of Blake street under consideration, and to lay four cross-over tracks to connect these side tracks, and provided that the company should not run engines or trains upon any of these tracks, except between 6 in the evening and 6 in the morning, without the written permission of the fire and police board. It is upon this state of the case that the question arises, did article 20 of the Constitu-

tion prohibit the grant of this revocable permission to the railroad company to use a portion of this street for railroad purposes? In other words, is a revocable permission to lay and operate a railroad track on a part of a street, granted to a company authorized by the state to maintain and operate a railroad to and through the city of Denver, a franchise, the grant of which, without the approving vote of the electors of that city, is forbidden by this article?

A franchise is a right or privilege granted by the sovereignty to one or more parties to do some act or acts which they could not perform without this grant from the sovereign power. Bank of Augusta v. Earle, 13 Pet. 595, 10 L. Ed. 274; D. & S. Ry. Co. v. Denver City Ry. Co., 2 Colo. 673, 682. Familiar illustrations are the right to be a corporation, to hold property, to sue and be sued as such, the right to build a bridge or to operate a ferry over a public stream and to collect tolls therefor, the right to construct and operate on and in the streets of a city a street railway, waterworks, gasworks, electric light works, to supply the city and its inhabitants with transportation, water, gas, and electric lights respectively, and to take tolls therefor. In this country the title of every lawful franchise is deraigned from the nation or the state, and the city of Denver had no power to grant any franchise which the Constitution and the laws of the state of Colorado had not authorized it to give.

It is not, however, every privilege or permission granted by state or city to occupy or to use public rivers, highways, or streets that rises to the dignity of a franchise. A privilege granted by a city to a private party to occupy or use a portion of a public street temporarily for the construction of a building upon an abutting lot, for a cab stand, an apple stand, or for any similar commercial purpose is a license and not a franchise. The exact line of demarcation between franchises and licenses may not be clearly drawn, but their general characters and limits are so well known and so clearly established that it is not difficult to assign many rights granted to the class to which they belong.

A right or privilege which is essential to the performance of the general function or purpose of the grantee, and which is and can be granted by the sovereignty alone, such as the right or privilege of a corporation to operate an ordinary or commercial railroad, a street railroad, city waterworks or gasworks, and to collect tolls therefor, is a franchise. New Orleans Gas Co. v. Louisiana Light Co., 115 U. S. 650, 659, 6 Sup. Ct. 252, 29 L. Ed. 516; Walla Walla v. Walla Walla Water Co., 172 U. S. 1, 9, 19 Sup. Ct. 77, 43 L. Ed. 341; Denver v. City Cable Co., 22 Colo. 565, 45 Pac. 439; Donahue v. Morgan, 24 Colo. 389, 390, 400, 50 Pac. 1038; Thomas v. Grand Junction, 13 Colo. App. 80, 81, 65 Pac. 665; City of Denver v. Denver Union Water Co. (Colo.) 91 Pac. 918, 919.

A right or privilege not essential to the general function or purpose of the grantee, and of such a nature that a private party might grant a like right or privilege upon his property, such as a temporary or revocable permission to occupy or use a portion of some public ground, highway, or street, is a license and not a franchise. A privi-

lege of the latter character, such as a permission to lay and operate a railroad across or for a short distance upon a public street, is a grant of an easement or right of way. An easement or right of way is not necessarily a creation of or a grant by the sovereignty. A private citizen may confer it over his own land, and the permission by a city to exercise such a privilege on one of its streets is of even less efficacy than such a private grant, because it is subject to the rights of the abutting owners, while the private owner's grant confers the perfect right of way over his property.

The Union Pacific Railroad Company was a corporation of the state of Utah to which the privilege to construct, maintain, and operate a railroad with the necessary switches, spurs, and terminal facilities into and through the city of Denver had been granted by the states of Utah and Colorado. Const. Colo. art. 15, § 4; Mills' Ann. St. §§ 599, 602; Sess. Laws Colo. 1901, p. 126, c. 53, § 1. That right was indispensable to the function and purpose of the corporation. No one but the sovereignty could grant it, and it was therefore a franchise. The city of Denver never had the power to grant or to refuse it, and it could not by any act or omission on its part prohibit or prevent the company from exercising this right. Its power was limited to the regulation and control of the streets of the city, subject to the general franchise of the corporation to operate its railroad into and through the city.

The privilege which is the subject of this litigation is limited and local, and it was not indispensable to the general object or to the performance of the main function of the Union Pacific Company. It could maintain and operate its railroad into and through the city of Denver as well without as with the right to operate its spur tracks upon Blake street, and this privilege seems to be a license rather than a franchise.

Counsel for the appellants invoke the rules that the obvious and common signification of the terms of the Constitution should be preferred to a hidden or extraordinary meaning, that a grant of power to a city should be strictly construed, and that if its existence is doubtful it should be denied. The soundness of these canons of interpretation is not denied, but the common, obvious meaning of "franchise" does not seem to be a permission by a city to use a portion of a street for railroad purposes granted to a railroad corporation empowered by the state to construct and operate its railroad into and through the city, and there is no doubt that under its general power to regulate and control the streets and the location of railroad tracks thereon the city council had plenary power to grant the permission here under consideration, unless it was forbidden so to do without a vote of the taxpaying electors by article 20 of the Constitution. The question, therefore, still recurs, is a revocable permission granted by a municipality to a railroad company empowered by a state to construct and operate its railroad into and through the city, to lay its tracks and operate its railroad along a few blocks upon a street of a city, a franchise, or a license within the meaning of this article of the Constitution, and upon the true answer to that question the entire issue turns.

Counsel for the appellants contend that the permit should be held to be a franchise, because the evil at which the constitutional inhibition was leveled was the grant of such easements or such rights of way upon the streets of the city. But there is nothing in the Constitution, in the charter, in the record, or within our knowledge of the history of the city of Denver, which indicates that the evil this clause was adopted to remedy was the grant of rights of way to ordinary railroad companies to operate their roads across or for short distances upon the streets of the city, rather than of the general privilege commonly called a "franchise," frequently granted by cities to street railway companies, water, gas, electric light, telephone, and other public utility corporations, to place and operate their rails, poles, and pipes upon or along the streets of a city and to take tolls therefor. So far as judicial notice informs, the exercise of the power to grant these general privileges without the approving vote of the electors, rather than the exercise of the authority to grant revocable rights of way to ordinary railroads upon small parts of the streets of a city, was the prime evil at which the Constitution was leveled, and that because there was more danger of a disregard of the public interests from the former than from the latter, because the framers of the constitutional amendment used the word "franchise" in this prohibition, the ordinary signification of which includes the former, but not the latter privileges, and failed to insert "license," "permission," "easement," or "right of way," and because the charter, which was framed by the representatives of and adopted by the people for whom that twentieth article of the Constitution was prepared and adopted, expressly confers upon the council of the city the power to grant the latter. Article 20 of the Constitution, and the charter of the city, were adopted in pursuance of a single plan for the sole benefit of the people of Denver. The article and charter were drawn, and their adoption was procured, the former from the electors of the state and the latter from the electors of the city by the representatives of the people of the city of Denver. As they were secured by the representatives of the same people in the execution of the same scheme, they should be read and construed together, and the provision of section 269 of the charter that the council may grant revocable licenses to use any street, alley, or public place is persuasive evidence that the people and their representatives never intended, by the prohibition of the grant of a franchise relating to any street, alley, or public place without a vote of the electors, to forbid the city council to grant licenses or permissions to use small portions of the streets of the city for railroad or other commercial purposes. The construction given to a Constitution by the first legislative body which acts thereunder is a contemporary interpretation of it which should be treated with great deference. Cooper Mfg. Co. v. Ferguson, 113 U. S. 727, 733, 5 Sup. Ct. 739, 28 L. Ed. 1137; People ex rel. Livesay v. Wright, 6 Colo. 92, 97.

The fact is repeatedly urged upon our attention that the railroad company tried and failed to get permission to lay and operate its tracks upon this street by a vote of the taxpaying electors. This circumstance, however, does not appear to determine the legal question wheth-

er or not the revocable permission subsequently obtained from the council was a prohibited franchise. It may be that counsel for the railroad company advised an election out of abundance of caution to avoid, if possible, litigation of the character now under consideration, and if, as seems to be contended, the action of the company establishes the fact that its counsel were of the opinion at the time of the election that the privilege under consideration was a franchise, they appear to be now of the opposite view, and their earlier opinion is no better evidence that their later opinion is wrong than their later opinion is that their earlier one was erroneous.

The next argument in support of the position of the appellants is that, by the legislation of the state and by the decisions of the Supreme Court of the United States and of the Supreme Court of Colorado, the settled meaning of the word "franchise" had come to include a revocable permission granted to an ordinary railroad company to lay its tracks and operate its railroad across, or for a short distance upon, a street in a city, before article 20 was framed or adopted, and they cite Sess. Laws Colo. 1889, p. 129, § 12, Sess. Laws 1893, p. 141, c. 78, § 10, Sess. Laws 1903, p. 158, c. 78, § 1, Sess. Laws 1891, p. 390, § 1, and the authorities from the Supreme Courts of the United States and of Colorado, which will be next considered. This legislation, these authorities, and many others have been carefully examined in vain to find any declaration of the Legislature of Colorado, or any decision of any court, to this effect. The grants called "franchises," in the opinions cited by appellants' counsel, were grants to public utility corporations of general rights to use the streets to provide the people of the municipalities with such utilities and to take tolls therefor. Not one of them applies that term to the mere consent of a city to the laying by an ordinary railroad company, incorporated by the state, of its tracks and the operation of its railroad over short parts of the streets of a municipality.

In New Orleans Gas Co. v. Louisiana Light Co., 115 U. S. 650, 659, 6 Sup. Ct. 252, 29 L. Ed. 516, the grant which the Supreme Court considered was of the exclusive right to supply gas to the city of New Orleans and its inhabitants through pipes and mains laid in its streets on condition that the grantee company should render the service ordinarily required of such corporations, and it was of this right that the Supreme Court said:

"The right to dig up the streets or other public ways of New Orleans and place therein pipes and mains for the distribution of gas for public and private use is a franchise, the privilege of exercising which could only be granted by the state or by the municipal government of that city acting under legislative authority."

In Walla Walla v. Walla Walla Water Co., 172 U. S. 1, 9, 19 Sup. Ct. 77, 43 L. Ed. 341, the Supreme Court was considering the grant to a corporation of the right to lay and to maintain and operate in the streets of a city, for 20 years, water mains and pipes to supply the city and its inhabitants with water and to take tolls therefor, in consideration that the corporation rendered the public service commonly performed by such water companies; and the court remarked that the

grant of such a right was the grant of a franchise. and that after the performance of the service it was a contract.

In Denver v. City Cable Ry. Co., 22 Colo. 565, 45 Pac. 439, the right which the Supreme Court of that state termed a "franchise" was the general right granted by the city of Denver pursuant to legislative authority, to a street railway company to lay its tracks and to transport passengers on the streets of Denver and to take tolls for the carriage.

In Donahue v. Morgan, 24 Colo. 389, 400, 50 Pac. 1038, the franchise of which the court spoke was the right granted by the city of South Pueblo to a private corporation to lay and to maintain, for 20 years, in the streets of that city water mains and pipes, and to supply the city and its inhabitants with water and to take tolls therefor.

In Thomas v. Grand Junction, 13 Colo. App. 80, 81, 65 Pac. 665, the right which the court termed a "franchise" was the general right to construct and operate for 21 years a system of waterworks to supply the city and its inhabitants with water and to take tolls therefor, and to lay and maintain mains and pipes in the streets of the city for this purpose.

In City of Denver v. Denver Union Water Co. (Colo.) 91 Pac. 918, 919, the franchise which the Supreme Court of Colorado was considering was the general right granted by that city to a private corporation to lay its pipes and mains in the streets of the city, to maintain them, and to supply the city and its inhabitants with water and to take tolls therefor for 20 years.

These are the authorities upon which counsel for the appellants chiefly rely. The brief review of them in which we have indulged discloses the fact that the question whether or not a grant by a city of the right of way to an ordinary railroad company over a portion of one of its streets is a franchise or a license was neither considered nor decided by the courts which rendered the opinions in these cases.

On the other hand, wherever the question has been raised and directly decided, the conclusion of the courts is uniform that such a privilege is a license, and not a franchise.

In Denver S. F. R. Co. v. Domke, 11 Colo. 247, 250, 251, 17 Pac. 777, 778, the railroad company was the purchaser at a foreclosure sale of all the rights and privileges of the Denver Circle Railroad Company. The latter company was organized as a corporation under the laws of Colorado, and by virtue of that incorporation received from the state the right to construct and operate a railroad between any designated points therein. The city of Denver by ordinance granted to it the right to lay its rails and to operate its trains along Willow Lane and Clark street in that city, and the questions were whether or not the city had the authority to permit the use of its streets for this purpose, and whether or not the rights of the circle company had vested in the purchaser at the foreclosure sale. The Supreme Court said:

"The Legislature has delegated the exclusive control of the streets to the municipal authorities, subject only to its own paramount dominion. We think the authority of the city council to permit the construction and operation of an ordinary railroad through the street rests upon clearly implied if not express legislative sanction. This question is practically res adjudicata. 'It was within the contemplation of legislation that they (ordinary railroads) might

enter and pass through the city. Railroad Co. v. Nestor, supra; Railroad Co. v. Mollandin, 4 Colo. 154.' * * * The ordinance before us granting a right of way to the circle road is therefore not invalid for the want of legislative authority in the premises. So far as this objection is concerned, the ordinance constitutes a valid license from the proper authorities to use a portion of the streets designated, and the circle company was not a mere trespasser ab initio. * * * And it is equally clear that the Denver & Santa Fé Company, through the purchase at the receiver's sale, succeeded to the rights and interests of the circle company under the ordinance. The former company is therefore the owner of the franchise, together with the license in question."

Throughout the opinion in this case the court calls the general right derived directly from the state to lay and operate the railroad a "franchise," and the permission granted by the city to lay and operate the tracks upon the portions of its streets a "license." In many other opinions of the Supreme Court of Colorado a privilege granted by a city to an ordinary railroad company to lay and operate its railroad across or along the streets of a city is termed a "permit," a "license," an "easement," or a "right of way," but never a "franchise." City of Denver v. Bayer, 7 Colo. 113, 2 Pac. 6; Denver Circle R. Co. v. Nestor, 10 Colo. 403, 405, 415, 419, 420, 423, 15 Pac. 714; Jackson v. Kiel, 13 Colo. 378, 381, 22 Pac. 504, 6 L. R. A. 254, 16 Am. St. Rep. 207; Jackson v. Ackroyd, 15 Colo. 583, 26 Pac. 132; People v. Mc-Murray, 27 Colo. 277, 281, 61 Pac. 226.

In Chicago City Ry. Co. v. People ex rel. Allen C. Story, 73 Ill. 541, 547, a railway company was empowered by its charter which it derived from the state to construct and maintain a railroad in a certain part of the city of Chicago over and along such streets as the common council of the city might authorize it to use. The city council by ordinance granted to it the right to construct, maintain, and operate a railway upon Indiana avenue from 22d street to the limits of the city within a certain time, and the company completed the railroad a part of the distance, but failed to finish it the entire length of the line, within the time specified. The city waived this failure, but the abutting owners insisted that the right granted by the city was a franchise, the conditions of which it could not waive, and that it was void. The court conceded that if the right was a franchise their claim was well founded, but held that it was a mere license, and hence that both the grant and the waiver were valid and in force. It said:

"But in the case at bar the grant in the ordinance is not a franchise, but a mere license, a permission to construct a railway in a certain street within a limited period. A franchise, according to the definition given by Blackstone, is a royal privilege, or branch of the king's prerogative, subsisting in the hands of the subject, and, being derived from the crown, must arise from the King's grant. 2 Blackstone, 17. Corporate franchises in the American states emanate from the government, or the sovereign power, owe their existence to a grant, or, as at common law, to prescription, which presupposes a grant, and are vested in individuals or a body politic. The grant or license given by the ordinance comes within no definition of a franchise. * * * The license granted by the ordinance is no more a franchise than would be a grant of the right of way by a private citizen to the company to construct its road over his lands, and it is as competent for the city as for a private owner to extend the time of performance, or to amend, modify, or annul the contract by mutual agreement."

In Belington & N. R. Co. v. Town of Alston, 54 W. Va. 597, 46 S. E. 612, chapter 29, at page 82, of the Acts of that state for 1901,

provided that no franchise should be granted by the council of any city, town, or village incorporated under the laws of the state unless an application for it was filed with the proper clerk and notice of the application was published for 30 days before the grant was made. The common council of Alston had granted to the Belington & Northern Railroad Company, a right of way over certain streets in the absence of the previous filing and notice of the application, and the first question in the case was whether or not the grant of this right to use the streets was a franchise. The Supreme Court of Appeals of that state held that it was not, and said:

"An action to test the authority of a railroad company to use a public street does not involve a franchise. Parlin v. Mills, 11 Ill. App. 396; Mills v. Parlin, 106 Ill. 60. Assent by a town to use of its streets by a railroad company is no more a franchise than the grant of a right of way through his lands by a landowner. C. C. R. Co. v. People, etc., 73 Ill. 541. It is an easement in corporeal property, and not a franchise. 3 Elliott on R. Roads, § 632. * * * Instead of being a franchise, its right of way through the streets is an easement, and the council's assent thereto is a license or grant thereof. Hence the act referred to does not govern or have any application to the plaintiff's rights acquired from the council. No. notice thereof was necessary, and the orders of the council complained of are valid."

The Supreme Court of Nebraska decided, after careful and exhaustive consideration and discussion, that a grant by a city to a corporation, which had authority from a state to maintain and operate a street railroad, of the right to lay and use its tracks on certain streets of the city, was not a franchise, but a license. Lincoln St. Ry. Co. v. City of Lincoln, 61 Neb. 109, 111, 129, 131, 84 N. W. 802.

In Parlin v. Mills, 11 Ill. App. 396, the city of Canton had granted to the defendants by ordinance the right to lay and operate a railroad on Fifth street in that city from the Chicago, Burlington & Quincy Railroad to the plow and machine shop of the grantees. An abutting owner secured a decree which enjoined the grantees from operating any railroad under this ordinance, and an appeal was taken to a court which had no jurisdiction to review cases which involved franchises, and the respondent objected to a consideration of the case upon that ground; but the court said:

"We are of the opinion that this point is not well taken. The suit is merely to enjoin the unauthorized use of the street, and not the determination of any question of title to or right of property in a franchise." Page 402.

To the same effect are Richards v. People, 100 Ill. 423, 425; Mills v. Parlin, 106 Ill. 60, 63.

In his work on Street Railway Law, at section 10, Booth says a franchise is a privilege conferred by sovereignty upon natural or artificial persons to exercise powers which they could not lawfully assume except in pursuance of such a grant. "But" he adds, "where a company is incorporated by the Legislature, which confers upon it specific power to construct, maintain, and operate a railway in a city, subject, however, to the consent of the city, and in such manner and upon such conditions as the city may impose, and the latter, by ordinance, grants the privilege of constructing and operating the railroad upon a certain street, the grant by the municipality is held to be a mere license, and not a franchise."

In Nellis on Street Surface Railroads, the author says, at page 55:

"The franchises of a railroad corporation are rights or privileges which are essential to the operation of the corporation, and without which its road and works would be of little value; such as the franchises to run cars, to take tolls, to appropriate earth and gravel for the bed of its road, or water for its engines, and the like. They are positive rights or privileges, without the possession of which the road of the company could not be successfully worked. There are certain other privileges, too, which are merely licenses, and not franchises, as where a corporation has a specific power to construct, maintain, and operate a railroad in a city, subject. however, to the consent of the city, and in such manner and upon such conditions as the city may impose. If the city, by ordinance, grants the privilege of constructing and operating the railroad upon a certain street, the grant by the municipality is a mere license, and not a franchise."

To the same effect are authorities almost without number wherein these municipal grants to companies incorporated under state laws to use specific streets or parts of streets for their corporate purposes are assumed to be, and are called, "licenses," "permits," "rights of way," and "easements," but never "franchises." Barber Asphalt Paving Co. v. City of Denver, 72 Fed. 336, 337, 19 C. C. A. 139; Metropolitan City Ry. Co. v. Chicago West Division Ry. Co., 87 Ill. 317, 322; Lincoln Street Ry. Co. v. City of Lincoln, 61 Neb. 109, 126, 84 N. W. 802, 807; Crowder v. Town of Sullivan, 128 Ind. 486, 28 N. E. 94, 13 L. R. A. 647; People ex rel. v. Ft. Wayne & E. Ry. Co., 92 Mich. 522, 52 N. W. 1010, 16 L. R. A. 752; Hayes v. Michigan Central R. R. Co., 111 U. S. 228, 229, 4 Sup. Ct. 369, 28 L. Ed. 410; East Alabama Ry. Co. v. Doe, 114 U. S. 340, 5 Sup. Ct. 869, 29 L. Ed. 136; Mayor of Knoxville v. Africa, 77 Fed. 501, 507, 23 C. C. A. 252, 258; Detroit Citizens' Street Ry. Co. v. City of Detroit, 64 Fed. 628, 633, 643, 12 C. C. A. 365, 370, 380; City of Detroit v. Detroit City Ry. Co. (C. C.) 56 Fed. 867, 874; Linden Land Co. v. Milwaukee Elec. Ry. & Light Co., 107 Wis. 493, 83 N. W. 851.

In the light of these authorities, there is no escape from the conclusion that by the consensus of judicial opinion at the time article 20 was framed and adopted, and ever since, a grant by a municipality to an ordinary railroad company incorporated under and empowered to operate by the laws of a state of the right or privilege of laying, maintaining, and operating its railway across or upon certain streets, or parts of streets, of a city, was and is the grant of a license, and not of a franchise.

There is a canon of construction which cogently argues that it was in this sense, in the sense which excludes such a grant or privilege, that the word "franchise" was intended to be used, and was used, in the prohibitory clause of this article. It is that a rational, sensible, and practical interpretation of a Constitution, statute, or contract should be preferred to one which is unreasonable, absurd, or impracticable. U. S. v. Ninety-Nine Diamonds, 139 Fed. 961, 965, 72 C. C. A. 9, 13, 2 L. R. A. (N. S.) 185; Stevens v. Nave-McCord Mer. Co., 150 Fed. 71, 75, 80 C. C. A. 25, 29; American Bonding Co. v. Pueblo Investment Co., 150 Fed. 17, 27, 80 C. C. A. 97, 107. The city of Denver is a large and growing metropolis. Many lines of railroad bear to it and carry from it numberless articles of commerce. As this city

increases in wealth, population, and business, new warehouses, new industrial plants, new business buildings of various kinds, will necessarily be constructed upon streets and alleys not now reached by existing railroad tracks, and the wise, economical, and successful handling of this commerce will demand that railroads be extended from their present lines across and along portions of its streets so that cars may be drawn to the sites of these buildings, to be there loaded and unloaded with various articles of commerce. The increasing business of the railroads will demand more extensive yards and terminal facilities and more railroad tracks. If every permission to lay and operate a railroad track across or upon any part of a street or alley were a franchise, then, before any permission to lay and to maintain it could be obtained, the cost of a submission to a vote of the taxpaying electors of a request for it would be required by article 20, to be deposited with the city treasurer, and a vote of the electors upon the proposition would be indispensable to the grant of the permission. A construction which would require this course of proceeding would make the prohibition of article 20 unreasonable, impractical, and contrary to the public policy of every prosperous city, because it would seriously retard the growth and gravely impair the ability of such a city to transact the commercial business of the country about it. It was not, it could not have been, the intention of the framers of this constitutional provision, or of the electors who adopted it, to place such a handicap upon the city of Denver, for whose benefit this amendment was adopted. The sum of the whole matter is that the common, obvious signification of the word "franchise," the rational, practical interpretation of the clause in which it appears, the contemporary construction of that clause by the representatives of the people and by the people themselves for whose benefit article 20 was framed and enacted, and the uniform current of judicial opinion, lead alike to the conclusion which the court below reached, and which this court now advisedly affirms, that a revocable permission granted by the city council of Denver to an ordinary railroad company to lay its tracks and operate its railroad across or upon parts of the streets or alleys of that city was never intended to be, and never was, prohibited by this amendment to the Constitution of Colorado.

But counsel for the appellants further contend that this license was beyond the powers of the city council, because, though revocable by its terms, it was so incumbered by conditions that it will never be recalled. The answer is that the authority of the city to grant licenses of this character was not limited by the charter to those which would be revoked in fact within a limited time, or at any time, but to those which the city would have the power to revoke, and that, while the prophetic vision to see when this license will be recalled has not been given, neither has the power to foresee that it will not be revoked been granted to the court, so that its judgment may not be founded upon either prophecy.

Again, the power conferred upon the city council by section 269 of the charter to grant licenses of this character was not limited to the granting of licenses unconditionally revocable, but it extended by

its terms to the granting of all revocable licenses, those revocable up-
on conditions as well as those revocable without conditions.   Moreover,
there is no impossible or impracticable condition imposed upon the re-
call of this license.   It is doubtful whether or not its revocation is sub-
ject to any condition whatever, so doubtful that, if the alleged condi-
tion would render the license void, it would be the duty of the courts
to hold that it might be revoked unconditionally.   The performance of
the alleged condition is neither impossible nor impracticable.   It is
that the city, upon the recall of the license, or any part of it, shall re-
pay to the railroad company the amount it has expended, not exceed-
ing $67,000 in paving and sewering the part of the street which the rev-
ocation affects.   Sixty-seven thousand dollars is not a large amount
of money for a city of the wealth and population of Denver to pro-
vide and to pay, and the terms of the ordinance are such that it may
revoke and pay in installments, and at times to be chosen and specified
by the city itself.   If this be a condition, it is neither impracticable nor
burdensome, and the result is that the charter empowered the city coun-
cil to grant revocable licenses to any street, alley, or public place in
the municipality.   This license is revocable, and its grant was within
the powers of the council.

The suggestion that the license was unauthorized because the per-
mitted tracks were not for public, but for private, use, cannot prevail.
In a sense every spur track to a private warehouse, manufacturing or
trading establishment, is for the private use of those who own and con-
duct the business therein.   But in a larger sense, and in the true sense,
every such railroad track is for the public use and for the public ben-
efit, because it enables the public to exchange its commodities for those
of the parties who conduct their business upon the track in a more
facile and economical way.   It reduces the prices of the articles carried
to the consumers, and it increases commerce.

The grant is to the railroad company, its successors and assigns,
and counsel insist that every license must be personal and unassignable,
and that, as this is not so, it is unauthorized and void.   But the city
council had power to grant this license to the Union Pacific Railroad
Company, and, if it was without authority to confer it upon its suc-
cessors and assigns, the result is that the latter portion of the grant
falls and the former stands.   The grant to the successors and assigns
was for their benefit, and not for the benefit of the city, or of the ap-
pellants, and the latter cannot object if the former waive or fail to en-
force this portion of the ordinance.   When a part of a divisible grant,
license, or contract is within, and another part is without the power
of one or more of the parties to it, the former is valid and may be en-
forced, and the latter void and may be renounced, unless it appears
from a consideration of the entire grant, license, or contract that it
would not have been made independently of the part which is void.
Illinois Trust & Savings Bank v. City of Arkansas City, 76 Fed. 271,
280, 22 C. C. A. 171, 179, 34 L. R. A. 518; Oregon Steam Navigation
Co. v. Winsor, 20 Wall. 64, 70, 22 L. Ed. 315; Reagan v. Farmers'
Loan & Trust Co., 154 U. S. 362, 395, 14 Sup. Ct. 1047, 38 L. Ed.
1014; Western Union Tel. Co. v. Burlington & S. W. Ry. Co. (C. C.)

11 Fed. 1, 4, and cases cited in note page 12; Saginaw Gas Light Co. v. City of Saginaw (C. C.) 28 Fed. 529, 540; 2 Abbott on Municipal Corporations, p. 1379. This court is not called upon at this time to consider or decide what rights the successors or assigns of the railroad company, if there ever are such, will acquire under this grant, for the license is still in the original licensee, and it is valid while the railroad company holds it, whether it may become void or remain valid when some possible future attempt to assign it shall be made.

The reasons urged with force and ability by counsel for the appellants why the grant of the right of way under consideration should be held to be unauthorized and void have now been discussed and considered, and our conclusion is that the word "franchise" does not include within its true signification a revocable permission granted by a city to a company, incorporated and empowered to perform its corporate functions by a state, to use for its purposes certain streets or parts of streets in the municipality, that such a permission is a license and not a franchise, that the permission granted by the city council of Denver to the Union Pacific Railroad Company to lay tracks and to operate engines and cars upon Blake street in that city for the distance of eight blocks was a revocable license and not a franchise, that the council was not forbidden to grant it without the approving vote of the qualified taxpaying electors of the city by article 20 of the Constitution of Colorado, but that it was empowered to make the grant by section 269 of the charter of the city, and the decree below is accordingly affirmed.